*Mr. J. Alton Davis* (with him *Mr. D. W. Connolly*), for the appellant.

Counsel cited: Rhea v. Forsyth, 37 Pa. 503 ; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Washburn's App., 105 Pa. 484 ; Bitting's App., 105 Pa. 517; Patterson's App., 129 Pa. 109 ; Clark's App., 62 Pa. 447; Brown's App., 62 Pa. 17 ; Norris's App., 64 Pa. 275; Tillmes v. Marsh, 67 Pa. 507 ; Phila. etc. R. Co. v. Obert, 109 Pa. 194.

*Mr. Andrew H. McClintock* (with him *Mr. M. I. Corbett*), for the appellee.

Other than cases cited by appellant, counsel cited: Masson's App., 70 Pa. 26.; Minnig's App., 82 Pa. 373 ; Holmes v. Bleaching Co., 14 N. J. Eq. 335 ; Carlisle v. Cooper, 21 N. J. Eq. 583 ; Cheesman v. Shreve, 37 Fed. R. 36.

PER CURIAM:

This was an appeal from the decree of the court below awarding a preliminary injunction.

> The decree is reversed, and the injunction dissolved at the costs of the appellees.

---

# THOMPSON GLASS CO. v. FAYETTE FUEL-GAS CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued November 10, 1890—Decided November 10, 1890.

(*a*) A contract between a natural-gas company and a glass-works company provided that the former should furnish gas for fuel to the latter, for a period of three years, if its wells were reasonably capable thereof, saving to other consumers a similar right of supply, and to domestic consumers, particularly, the first right over manufacturing companies :

1. On a bill filed by the glass company, alleging that its works had been constructed for the use of natural gas only as fuel; that the gas company had turned off the supply of gas ; and that unless the supply were continued irreparable injury would ensue, it was not error to refuse an interlocutory decree in the nature of a mandatory order upon the defendant to continue the supply.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 99 January Term 1891, Sup. Ct.; court below, No. 162,
C. P. in Equity.

On October 30, 1890, the Thompson Glass Co., Limited,
filed a bill in equity against the Fayette Fuel-Gas Co., in which
it was in substance averred:

That the plaintiff was the owner in fee of twelve acres of
land near Uniontown, whereon were erected a sixteen-pot flint-
glass furnace and out-buildings; that said furnace, in its con-
struction, was adapted to the use of natural gas only as a fuel;
that the defendant corporation, on April 20, 1889, entered into
a contract whereby it agreed to supply the plaintiff's glass
works with natural gas for fuel and illumination to an amount
sufficient for purposes specified, for three years from the date
of the contract, "unless there should be a failure or a material
falling off of the gas wells" of the defendant company; that in
accordance with said agreement the plaintiff caused to be paid
to the defendant company the sum of four thousand dollars,
which was in full payment for all gas required for the full term
of three years from the date of said agreement; that, in pursu-
ance of said contract, the defendant furnished the said natural
gas for fuel to the plaintiff through a system of pipes and con-
ductors so as to enable the plaintiff to conduct its said business;
that the plaintiff's works could not be changed for the use of
any other fuel, without great and permanent loss to the plaintiff;
that the supply of gas in the wells and territory of the defend-
ant was and always had been sufficient for the purposes of the
contract, as well as for the purpose of furnishing fuel to domes-
tic consumers who were being supplied by the defendant; that
on October 17, 1890, the defendant without any just cause and
in violation of its contract began to shut off the flow of natural
gas from the plaintiff's glass works, and continued to reduce
the supply until, on October 24th, the work at plaintiff's fac-
tory was stopped, and on October 28th the plaintiff shut off the
supply entirely; that the supply of natural gas was exclusively
within the defendant's control, and it was not within the plaint-
iff's power to influence the action of the defendant, or to obtain
a supply of gas for its furnace from any other source or place

than from the defendant. Averring irreparable injury to the works and business of the plaintiff from a continued cessation of the suply of gas by the defendant, under said contract, specifying particularly the injuries which would ensue to the plaintiff thereby and that it could not be adequately compensated by damages to be recovered in an action at law, the defendant being greatly indebted and probably insolvent, the bill prayed for an injunction restraining the defendant from continuing to diminish or obstruct the supply of natural gas which flowed through the defendant's lines to the plaintiff's works prior to October 17, 1890, and for a mandatory order directing the defendant to open the stop-cock attached to its line and permit the flow of gas to continue as before said date, and for general relief.

The contract of April 20, 1889, contained the following provisions:

" As the production of gas from wells and the conveyance of it over long distances are subject to accidents, interruptions and failures, which cannot be foreseen or prevented by any reasonable expenditures, watchfulness or care, the company does not by this contract undertake to furnish to the said consumer a full and uninterrupted supply of gas for the period named herein, but only to furnish such supply and for such length of time, limited by the term hereof, as the wells and pipe lines of said the Fayette Fuel-Gas Company are reasonably capable of, saving to every other consumer upon said pipe lines a similar right of supply, and to domestic consumers, particularly, the first right of supply at all times over any and all manufacturing establishments being furnished gas for any purpose by said company. And it is expressly agreed by the consumer that said the Fayette Fuel-Gas Company shall not be liable for any loss, damage, or injury that may result from any such shortage or interruption."

On the hearing of a motion for a preliminary injunction, on October 31, 1890, the plaintiff read affidavits in support of the averments of the bill. After argument, the court, INGHRAM, P. J., entered a decree refusing the interlocutory decree prayed for, whereupon the plaintiff took this appeal, assigning the refusal of said decree for error.

Syllabus.

○ Mr. W. G. Guiler and Mr. George Shiras, Jr. (with them Mr. C. C. Dickey), for the appellant.

Counsel cited: Bierbower's App., 107 Pa. 17; Earley's App., 121 Pa. 496; Brush Elec. Co.'s App., 114 Pa. 574; Kirkpatrick v. McDonald, 11 Pa. 387; Story's Eq. J., 24; Warner v. McMullin, 131 Pa. 382; Bispham on Eq., § 400; Kerr on Inj., § 51; 1 High on Extra. Rem., § 2.

·Mr. S. L. Mestrezat (with him Mr. S. E. Ewing), for the appellee.

That the decree prayed for was not preventive, but mandatory, and therefore was properly refused, counsel cited: High on Inj., § 14; Machine Works v. Railway Co., 20 N. J. Eq. 379; Washington University v. Green, 1 Md. Ch. 97; Waring v. Cram, 1 Pars. 526; Farmers' Railroad Co. v. Railway Co., 53 Pa. 225; Brown's App., 68 Pa. 53; Mammoth Vein Coal Co.'s App., 54 Pa. 183; Audenried v. Railroad Co., 68 Pa. 370.

PER CURIAM:

This was an appeal from the refusal of the court below to award a preliminary injunction.

> The decree is affirmed and the appeal dismissed at the costs of the appellant.

---

## H. READ ET AL. v. ST. AMBROSE CHURCH.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS No. 3 OF PHILADELPHIA COUNTY.

Argued March 26, 1890—Decided January 5, 1891.
[To be reported.]

(a) The vestry of St. Ambrose church granted to a subsidiary church organization, called "The Guild of St. Ambrose Church," permission to build "an addition to the church, for their own and parish uses," with the proviso "that they incur no debts for which the vestry shall be held responsible."

(b) The purposes of the guild, as stated in its constitution, were "the advancement of the interests of St. Ambrose parish, and the promotion of good feeling and social intercourse among its members." The