# Warden et al. *versus* Eichbaum.

1. Where a sale is made of land, no one shall be permitted to receive both the money and the land ; and hence, where one receipts the proceeds of the sale of land, this is an affirmation that his title has passed to the purchaser by virtue of the sale.

2. The committee of a lunatic is but the bailiff of the court, and his acts, so long as they are unauthorized and unsanctioned by the court, can have no effect in divesting the lunatic's title to real estate.

3. *Qui facit per alium, facit per se,* is a maxim which applies as well to powers created by law as to those conferred by acts of the party.

4. It is not necessary in order to bind a lunatic that the court should go through the idle and unnecessary form of a sale, if a result equally advantageous to the lunatic can be attained by adopting a fair and informal one already made.

5. The decisions of a court are binding until reversed by appeal, writ of error or otherwise, and cannot be overhauled in collateral actions.

ERROR to the District Court of *Alleghany County*.

Ejectment against defendant in error as committee of Matilda Elliott.

The facts sufficiently appear in the opinion of the court delivered October, 1853, by

LEWIS, J.—If the rules of law compel us to affirm the judg-

[Warden et al. *v.* Eichbaum.]

ment rendered by the District Court in this case, it will be one of the most unjust decisions that ever was pronounced in a court of justice. West Elliott, the father of the plaintiff below, died on the twenty-ninth July, 1828, and an action was brought by a creditor against his administrator, on the twenty-fourth of December, one thousand eight hundred and thirty-three. At this time the debt was a lien on his real estate, and there was no law requiring the writ to be served on his heirs. The judgment was duly recovered, and the land was sold to Warden and others, who received a sheriff's deed duly acknowledged on the fourth December, 1835. Possession was taken under this sale, a town laid out, lots sold, buildings erected, and vast improvements made, so that upwards of ninety defendants, inhabitants of the town of Temperanceville, after nearly sixteen years' acquiescence in their possession and improvements, are called upon to surrender their possessions, and to lose their money and labor expended upon the faith of a sale made under the solemn sanction of a judicial tribunal, having undisputed jurisdiction over the subject matter as well as over the parties in interest. The sheriff's sale is alleged to be defective, because the heirs were not made parties to the action brought in 1833, according to the provisions of the act of 24th Feb. 1834. If the question were still open for decision, we would have no hesitation in declaring that the act of 1834, in providing that in all actions against executors and administrators of a decedent, "when the plaintiff intends to charge the real estate," the widows and heirs or devisees, and the guardian of such as are minors, shall be made parties thereto," did not operate retrospectively, and had no application whatever to actions brought before the act was passed; nor should we have any hesitation in saying that the provision in the act of 1834, which exempted from repeal, the former law "so far as may be found necessary to finish proceedings commenced, or to settle estates of persons who may have died before that time," fully authorized judgments to be recovered, and sales to be made, without notice to the heirs, in all cases where the actions were duly brought according to the existing law before the act of 1834 was passed; but a different doctrine was adopted by our predecessors, and it has been followed so generally and so long, that we yield to it on the principle of *stare decisis.*

In the case of all the heirs of West Elliott, except Matilda the lunatic, it has been held that their receipt of the proceeds of the sale was an affirmation that their title had passed to the purchaser, by virtue of the sheriff's sale. This was upon the principle of equity, that where a sale is made of land no one shall be permitted to receive both the money and the land. *Smith* v. *Warden,* 7 Harris, 430. But in the case of Matilda

Elliott it has been held that she is not stopped from impeaching the sale *by the acts of her committee in receiving her share of the proceeds of the sale, and by his acts and declarations, ratifying and consenting to the same. Warden et al.* v. *Eichbaum,* 2 Harris, 121. We are not disposed to disturb the principle thus decided, nor are we inclined to extend it beyond the limits assigned in the adjudication. As the committee of a lunatic is but the bailiff of the court, and as his acts, so long as they are unauthorized and unsanctioned by the court, can have no effect in divesting the lunatic's interest in real estate, we see no objection to the principle thus decided. But as the Court of Common Pleas by the Constitution, has "the power of a court of chancery," so far as relates to the persons and estates of those who are *non compotes mentis,*" and has also by statute the power to divest the interest of the lunatic in real estate, by sale or mortgage, whenever it is necessary "for the payment of debts" or for the "support of the lunatic or his family," or "for the education of his minor children," the case is presented in a very different aspect when the act of the committee is fully made known to and solemnly sanctioned by the court in a judicial decree. It is absolutely indispensable to the proper care of persons thus unable to act for themselves, that this power should exist somewhere. The existence of the power is equally necessary for the prosperity of the country and for the protection of the community. It is a rule of jurisprudence that whatever is done by a competent representative, binds the constituent as effectually as if done by the latter in person. *Qui facit per alium facit per se,* is a maxim which applies as well to powers created by law as to those conferred by acts of the party. Were it not so, neither infants, *femmes covert,* nor *lunatics* could be bound even by acts absolutely necessary for their support, and greatly conducive to their benefit. It is upon this principle that the husband, by virtue of his power as his wife's representative, may assign not only her reversionary interest in choses, but her bare possibilities; and the contract is as binding upon her as if made by herself, and she is thereby estopped from laying claim to rights thus assigned, although they vest after her husband's power has been determined by death. *Siter's Case,* 4 Rawle, 482; *Smilie's Estate,* 10 Harris, 13. It was upon this principle that the act of a trustee under the insolvent law in a matter which did not pass by the assignment under the law, was held to bind not only the insolvent himself, but those who were *compelled to derive title under him* to the administration on his wife's estate. It was upon this principle also that the sale of real estate, under a decree of the Orphans' Court, for the support of a minor, and the application of the proceeds under the direction of the court to that purpose,

was valid against the minor, although the latter had no title whatever to the land at the time. The proceeds had been applied to his benefit by those having the care of his person and estate, and this was sufficient in a court of conscience and honesty to bind the title which he afterwards acquired. *McPherson* v. *Cunliff*, 11 S. & R. 426. In this, as in other kindred cases, the law does not regard the form so much as the substance. The disabilities created by law are designed as a shield for the protection of those who might otherwise be injured, and not as a sword, to make war upon others. If an infant does a right act, which he ought to do, or which he was compelled to do, it shall bind him. As if he make *equal partition*, if he pay rent, if he admit a copy-holder upon a surrender, or if he contract debts for necessaries, or even borrow money, and apply it to payment of debts for necessaries, for generally whatever an infant is bound to do by law, the same shall bind, although he doth it without suit. *Zouch* v. *Parsons*, 3 Burr, 1794; 2 Kent, 236; *Harris* v. *Lee*, 1 P. Wms. 483. It is not necessary, therefore, in order to bind the lunatic in this case, whose condition is like that of an infant, that the court should go through the idle and unnecessary *form* of a sale, if a result equally advantageous to the lunatic can be attained by adopting a fair but informal one, already made. This, the court is necessarily the proper tribunal to decide, and its decisions are not mere nullities, even when infants or lunatics are concerned. They are binding until reversed by appeal, writ of error, or otherwise, and cannot be overhauled in collateral actions. Acts of record, as fines, recoveries, and recognizances, must be avoided by writ of error or *audita querela*. Co. Lit. 380 (C); 2 Kent, 237. If a feme covert be sued as a feme sole, the sheriff shall take her in execution, though she be a feme covert, and have another name, because she is estopped by the judgment until it is reversed. 1 Rol. 869; 4 Com. Dig. 204. A judgment on warrant of attorney against a feme covert, must be reversed on error, and not otherwise. 3 R. & P. 128, 220; Bingh. Inf. 238. If, by an oversight of a judge, a lunatic is permitted to levy a fine, or to suffer a recovery, they will be valid at law. 2 Mad. 593; 4 Co. 124. Although instruments of record cannot be set aside at law, equity will afford relief, but of course upon equitable terms. 2 Vern. 678. But equity will not impeach a conveyance of a lunatic after twenty years and two subsequent purchases; *Winchcombe* v. *Hall*, 1 Ch. R. 22; nor set aside dealings in *the course of his trade; Hill* v. *Morley*, 9 Ves. 478; and generally it may be said that the interference of courts of equity, in cases of this description, depends upon the circumstances of each case, and no general rule can be laid down. 9 Ves. 478; 2 Mad. 594.

[Warden et al. *v.* Eichbaum.]

With these principles in view, let us glance at the facts of the case. The proceeds, after payment of the decedent's debts, which were prior liens, was paid or secured to John M. Snowden, the committee of the lunatic, and he acknowledged the receipt of the money, and released all claim to the land, and also all claim upon the sheriff, by an instrument dated 29th May, 1836. He was cited to file his account, and did so on the 4th March, 1842; in which he charged himself with the money thus received and with its interest. On the 19th March, 1842, James Elliott, the brother of Matilda, the lunatic, on whose behalf the citation had issued, excepted to the account, on what is in substance the identical ground now taken here, that the moneys charged were received on sales of real estate of the lunatic; which sales, it was alleged, were made by accountant without authority from the court, and therefore they were invalid, and the accountant should be charged with the *rent.* An auditor of distinguished ability was appointed, and after full hearing, and an agreement on the balance, *making no alteration whatever in the moneys charged to the accountant,* a report was made accordingly, which was confirmed nisi on the 8th day of May, 1843, and absolutely on the 27th May, 1843, on which day Snowden was ordered to pay over the money to his successor, Eichbaum. Here the very question of ratifying the sale by receiving the money was brought directly before the court, and the court decided on the report of the auditor, to receive the proceeds of the sale. It was not shown that the sale was unfairly made, nor that the land sold at an under value. There is no proof that the lunatic had other property sufficient to pay all the debts of the decedent, and to support herself, and thus to save the property from sale. A sale was, therefore, inevitable. For what purpose should the court, under such circumstances, cause the delay and expense of a second sale. Such an unnecessary proceeding would have been unworthy the character of an enlightened tribunal. The decision was, therefore, correct. But, if not correct, what was the remedy? An appeal to the appellate tribunal was the only remedy. That course was not adopted; on the contrary, Eichbaum, who was appointed the committee in the place of Snowden, on the 18th October, 1843, brought a suit against Snowden and his surety for the money, and recovered judgment for it. On the 22d July, 1846, Eichbaum entered satisfaction on this judgment. After the lapse of five years, a period long enough to file a bill of review in the Orphans' Court, Eichbaum brought the present ejectment to reverse collaterally all these proceedings. This ejectment is thus brought more than sixteen years after the sheriff's sale, nearly fourteen years after the decree of distribution of the money raised by

[Warden et al. *v.* Eichbaum.]

the sale, nearly twelve years after the final confirmation of that decree, more than eight years after the final confirmation of the account of Snowden, the committee, in which he charged himself with the proceeds of the sale; eight years after the very plaintiff, who, as the committee of the lunatic, now sues for land, had brought suit and recovered a judgment for the proceeds arising from its sale! This ejectment, as already remarked, is not brought until five years after the same man who brings it, had actually received, under a judgment of the court, the proceeds from his predecessor in the trust. The bare statement of these facts is a sufficient answer to the demand of the plaintiff below. The Common Pleas has the same control over the committee of a lunatic that it has over guardians, executors, or administrators. Act 13th June, 1836, sec. 1, 3. No appeal from a decree in the Orphans' Court, on the accounts of the latter, can be allowed after three years, and no reversal shall divest any interest or estate acquired by persons who were not parties thereto, where the court had jurisdiction of the case. Act 29th March, 1832, sect. 59. A bill of review will not lie in the Orphans' Court even within five years, if the balance found due shall have been paid. Act 13th October, 1840. A writ of error is barred after seven years. Act 13th April, 1791. It is now impossible to reverse these decrees and judgments by any *direct* proceeding known to the law. It is therefore equally impossible to reverse them by any *indirect* or *collateral* proceedings. It follows that the proceeds of the sale of this land have been legally appropriated by competent authority to the benefit of the lunatic. This appropriation being legal and irreversible, is therefore necessarily a ratification of the sale. In this sense it was said in *Com.* v. *Shuman's Adms's,* 6 Harr. 346, and repeated in *Smith* v. *Warden,* 7 Harris, 430, that equitable estoppels of this character apply to infants as well as adults, to trustees of insolvents and guardians as well as to persons acting for themselves; and have place as well where the proceeds arise from a sale by authority of law, as where they spring from the act of the party.

The committee of the lunatic being the bailiff of the court, ought not to have been permitted to bring this ejectment. Having brought it, the court ought to have instructed the jury that the plaintiff below had no title whatever to recover.

Judgment reversed, and *venire de novo* awarded.

BLACK, C. J., and WOODWARD, J., dissent.