## BLACK LICK MFG. CO. v. SALTSBURG GAS CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF INDIANA COUNTY.

Argued March 5, 1891*—Decided March 9, 1891.

(a) The defendant, a natural gas company, contracted in writing to supply the plaintiff, a manufacturer, with gas for fuel in his works, for the term of ten years, reserving the right, however, to cut off the gas for any of certain specified causes, among which were " want of supply," and any waste or misuse of gas by the plaintiff.

(b) On a bill filed to restrain the shutting off of gas from the plaintiff's works the court granted a preliminary injunction, and, the gas having been shut off before its service, afterwards made a mandatory order requiring that the enjoyment and use thereof, which the plaintiff had when the injunction was granted, be restored to him.

(c) The defendant, after filing an answer which averred, inter alia, a decrease in the supply of gas at its wells, and a waste and misuse of gas by the plaintiff, moved that the injunction and mandatory order previously served be dissolved. The motion was heard upon the pleadings, and affidavits and counter-affidavits:

1. The court, finding that the answer and affidavits filed raised a doubt

---

* Heard by advancement in the Eastern District.

as to the propriety of continuing the mandatory order, and that the lack of an adequate remedy at law was not clear, made a decree dissolving the injunction and mandatory order, without prejudice to a motion for their renewal should proper cause arise: Affirmed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 62 October Term 1891, Sup. Ct.; court below, No. 190 December Term 1890, C. P. in Equity.

On November 3, 1890, the " Black Lick Manufacturing Company, E. J. Mildren, proprietor," filed a bill in equity against the Saltsburg Gas Company, praying for an injunction to restrain the defendant from turning off the supply of natural gas from the fire-brick works of the plaintiff, during the term of a certain contract between the plaintiff and the defendant. On Saturday, November 1, 1890, at about 10 o'clock P. M., the bill, with injunction affidavits, had been presented to WHITE, P. J., who made an order granting a preliminary injunction, but the prothonotary's office being then closed the plaintiff was unable to file the bill and have the writ issued, until Monday, November 3d, when the injunction was served upon the defendant.   The plaintiff, on the same day, filed a petition for an attachment against the defendant for contempt in not obeying the preliminary injunction, whereupon a rule to show cause was granted.

On November 7, 1890, the rule for an attachment, and a motion for a continuance of the preliminary injunction, came on for hearing, when the plaintiff's bill was amended by introducing the averment that, since the order of November 1, 1890, granting the preliminary injunction, the defendant had turned off the gas from the plaintiff's works, and adding a prayer for a mandatory order to compel the defendant to restore it.

Upon the hearing, the following facts were made to appear:

The plaintiff was extensively engaged in the manufacture of fire brick at Black Lick station, Indiana county, prior to August, 1889, using coal for fuel.   On June 25, 1889, he entered into a contract with " Wilson & Clements, or their assigns," for a supply of gas for use as fuel in the brick works for ten years, at certain rates for specified uses, subject to

rules and regulations appended to the contract, one of which was as follows:

" 2. . . . . And the company reserves the right to cut off the supply for any of the following reasons: 1, for repairs; 2, for want of supply; 3, for non-payment of bills when due; 4, for fraudulent representations in relation to consumption of gas; 5, for waste of gas; 6, for violation of clauses 5 and 6 of § 34, act of April 29, 1874."

This contract was assigned by Wilson & Clements to the defendant company. Soon after making it, the plaintiff put into his works the appliances necessary to fit them for the use of natural gas as fuel, expending therein some $3,000; and in August, 1889, he made connections with the defendant's lines, and thereafter abandoned the use of coal and conducted his works with gas exclusively for fuel.

On October 28, 1890, the defendant sent to the plaintiff the following written notice: " Dear Sir: The directors have this day instructed me to notify you that, owing to shortage of gas, it is impossible to furnish you with gas for manufacturing purposes, and by this mail our superintendent has been instructed to turn it off. Very much regretting the necessity of this action," etc.

. At the time of receiving this notice, the plaintiff had a kiln of brick ready to fire, and after some negotiations the defendant turned on the gas to allow him to burn it, but refused to furnish him gas to operate his works. The plaintiff burned the kiln, finishing on Sunday, November 2d, and on the evening of the same day the gas was again turned off by representatives of the defendant, who denied that they had any knowledge at that time of the order, made the preceding day, granting a preliminary injunction.

Additional facts sufficiently appear in the opinion of the court below, filed November 11, 1890, WHITE, P. J.:

The plaintiff has also made it clearly appear, that if the gas remains permanently turned off, his expenditure in fitting up his works for its service will be hereafter useless; that a return to another fuel will also be expensive, and he will be delayed and also inconvenienced in the manufacture of brick in the fulfilment of his contracts; and that the necessarily tardy

Opinion of Court below.

proceedings of an action at law for damages against the defendant company, if he could maintain it, would be an inadequate remedy. He has made it clearly appear, further, that the supply of gas at his premises, in the defendant company's mains, is sufficient to furnish him gas under his contract; that he has contracts for the supply of various furnaces, rolling mills and others, with fire brick, and that, at the time of the occurrence of the cause of his complaint, he was actively running his works, and the shutting off the gas stopped them. . . . . .

The wells appear to be located on Pine run, Westmoreland county. The gas is conducted thence by pipe to Saltsburg, thence to Blairsville, and thence to Indiana, past the plaintiff's brick works. At these towns and intermediate points, there are consumers for various purposes. The main pipe from Saltsburg was originally a six-inch one, but some time since the company laid an additional eight-inch main pipe, between the wells and the brick works of the plaintiff, for a distance of about six miles. After a careful reading of all the affidavits presented by the defendant company, we can find no averment that the supply of gas at its wells is so short that it cannot supply the plaintiff's works, or that the supply of gas in the main at the plaintiff's works is so short that he cannot be there supplied; . . . . but it is averred that he must be shut off, so that the company can supply its other customers and consumers at Indiana, or other points, beyond plaintiff's works.

—Citing Lauman v. Young, 31 Pa. 307; Cogley v. Browne, 11 W. N. 224; Wills v. Natural Gas Co., 130 Pa. 230; Audenried v. Railroad Co., 68 Pa. 375; Cooke v. Boynton, 135 Pa. 102, and finding, as matters of law, that the want of supply which was in the contemplation of the parties to the contract at the time thereof, as a cause which would justify shutting off the gas, was a shortage resulting from the natural failure or exhaustion of wells, or accident, and that the contract did not authorize the cutting off of manufactories, for the purpose of supplying consumption for domestic uses; that other causes for shutting off the gas, which the defendant's injunction affidavits alleged to exist, could not be considered, as the notice of October 28, 1890, in pursuance of which the turning off took place, was an election to turn off because of shortage alone and a waiver of any other causes, if such existed; and

that the court had power to make a mandatory order restoring the plaintiff to the use of gas from the defendant's line, the court on November 11, 1890, entered the following decree:

And now, to wit, November 11, 1890, the preliminary order of November 3d is continued until further order, and the defendant company, through its proper officer or employees [is commanded] to restore to the plaintiff the enjoyment and use of gas from their main near the plaintiff's works, as he used and enjoyed it November 1st instant; this order, however, and preliminary injunction not to interfere with the defendant company, through its proper officers or employees, from having free access to the plaintiff's premises where the gas is used, to discover the manner in which the plaintiff uses it, and to turn the same off, if used contrary to the agreement of June 25, 1889, or with the right of the defendant company to turn off the gas for want of supply, occurring in the manner indicated in the foregoing opinion, or for any cause stipulated in the contract authorizing such turning off.

On December 20, 1890, having answered the plaintiff's bill, the defendant moved the court to dissolve the preliminary injunction and mandatory order. After argument of the motion before WHITE, P. J., and DOTY, P. J. 10th district, upon affidavits read in support thereof, and counter-affidavits read by the plaintiff, the court on January 8, 1891, filed the following opinion:

Previous to the filing of an answer by the defendant company, a preliminary injunction and mandatory order were directed by the court, to prohibit the defendant company from turning the gas off from the plaintiff's works, and to restore to the plaintiff the use of the gas as he had it November 1, 1890, the date of presenting the bill at chambers. On a careful review of the plaintiff's bill and the affidavits submitted on both sides, we think the decree of the court of November 11th was a proper one. This court, as now constituted, approves the opinion and reasoning of the court in making such a decree.

The power to make a mandatory order in an application for a preliminary injunction, so as to restore the status quo to the condition existing prior to the wrongful act and preserve it until a final hearing, is sanctioned by authority in this state.

The reasoning of Justice SHARSWOOD in Audenried v. Railroad Co., 68 Pa. 375, does not imply that it has not been and cannot be done, but utters proper admonitions about the great care with which it should be done.   The very recent case of Cooke v. Boynton, 135 Pa. 110, is an authority directly showing that it can be done.   The court below, there, on page 106, expressly decided " that no mandatory injunction can issue except upon final hearing."   The present Chief Justice ruled just to the contrary.   So, the power to issue such an order is now res judicata.   There being no difficulty about the law, the question always arises when a mandatory order is asked, do the facts of the particular case authorize it ?   We think under all the circumstances the mandatory order in this case was properly issued.

Since the answer of the defendant has been filed, however, some new facts and matters have been averred and presented. For obvious reasons we will not enter into an enlarged discussion or express our opinion about them, for they involve the merits of the controversy, which would be improper for us to decide at this stage of the case.

The defendant, in its answer and by its affidavits, has made the very material averment of a shortage of supply at its wells, resulting in a decrease of pressure from 275 pounds to the square inch to 130 pounds to the square inch, although four additional wells have been connected with its line ; and has further averred that the pressure is gradually decreasing, and it has become necessary to economize the use of its gas in every possible way. It is quite true, these averments are not accompanied with the statement that the company cannot supply the plaintiff's works. Still, the averment of such a material decrease of pressure and supply, presents a question we cannot fail to consider, in connection with the feature of the contract of June 25, 1889, which authorized shutting off for " want of supply."   The expression in the contract, " want of supply," in the connection we find it, is not entirely clear.   If we would seek to define " want," we find it means, deficiency, lack, failure, scarcity ; and the familiar word " supply " is defined, " sufficiency of things for use or want."   With such meaning to this very plain expression, it is somewhat confusing to know what was in the contemplation of the contracting parties when they used it.   And in this connection, we cannot fail to consider the defendant's averments about the diminishing supply at its wells.

The defendant, further, by its answer and affidavits, avers a waste and misuse of gas by the plaintiff, of which it was not aware when the notice of October 28, 1890, was served, and that the company did not waive any cause for turning off the gas the contract authorized, of which it was not aware, when such notice was served. It is quite true, the plaintiff has filed a variety of affidavits in reply. We shall forbear in the view we now take of the case to discuss them. This court still adheres to the view heretofore expressed that the contract between these parties did not and does not authorize the company to turn off the gas from the plaintiff's works because it could not supply him and at the same time some other consumers on another part of the line; or, in other words, that it cannot turn off from one consumer merely to supply another; but the averments of the answer, we have mentioned, supported by affidavits, raise some new and different questions from those originally presented, and make us hesitate about continuing the mandatory order heretofore issued.

A hesitancy, at this stage of the case, is equivalent to that doubt which makes it the duty of the chancellor to relax the strong arm of his injunction, until he is further advised by full hearing of the proofs of the parties. Says Judge KING, in Waring v. Cram, 1 Pars. 526 : " A preliminary injunction . . . . is never awarded except in clear cases of right, and where no doubt exists as to the claim of the plaintiff to the remedy he invokes." Says Justice WILLIAMS in Reno v. Moss, 120 Pa. 67 : "It is the existence of the doubt, however arising, that stays the hand of the chancellor." The averments, then, to which we have referred, made under the solemnity of affidavits, have presented some features of the case we cannot fail to consider. As we have said, they raise some doubts of the propriety of continuing the mandatory order. Such a doubt existing, our duty is clear.

The view we have just expressed renders it unnecessary for us to fully discuss the question of jurisdiction. There is much force, we confess, in the objection that the plaintiff has an adequate remedy at law in an action for damages. In the opinion of this court, filed heretofore in this case, we briefly adverted to the complaint of the plaintiff, that the necessary tardy proceedings of an action at law for damages, if he could maintain

it, would be an inadequate remedy.   We were impressed with such facts as his fitting up his works at considerable expense to use the gas; his adoption of it and abandonment of other fuel; his contracts with distant firms to supply them with brick; his brick there in the kilns, but partly burned; the gas about to be turned off, leaving him in such situation and causing such injury and damage for which no action at law would supply an adequate remedy.   That an action at law, if the gas was improperly turned off, would lie, we had no doubt.   Our doubt was, however, about its supplying an adequate remedy in the measure of damages for such an injury.   We thought it our duty, therefore, to preserve the status quo, so that the plaintiff could proceed with his kilns, instead of pursuing the uncertain remedy of an action at law.   Recent utterances, however, of the Supreme Court have changed somewhat our opinion of the equity jurisdiction of this case.   Not being entirely clear, however, that equity does not have jurisdiction here, we shall forbear further discussion in this behalf, and await the development of final hearing.   It may be that such a case of irreparable injury will be developed as will relieve all doubt on the question of jurisdiction.

And now, to wit, January 8, 1891, injunction and mandatory order of November 11, 1890, dissolved, without prejudice to renew the motion for injunction should proper cause arise; the case now to go on to final hearing.[3]

—Thereupon, the plaintiff took this appeal, specifying that the court erred:

1. In dissolving the preliminary injunction.

2. In dissolving the mandatory order of November 11, 1890.

3. In entering the decree of January 8, 1891.[3]

On March 2, 1891, the appellee moved to dismiss the appeal "for want of jurisdiction, the statutory right of appeal from interlocutory decrees pertaining only to decrees granting or refusing special and preliminary injunctions, and not to decrees, upon motion after answer filed, dissolving such injunctions granted upon hearing."

*Mr. D. B. Taylor* (with him *Mr. S. M. Jack*), for the appellant:

Counsel cited, as to enforcing the contract between the par-

Opinion of the Court.

ties by injunction: (1) Lutz v. Lutz, (C. P. Beaver,) 17 Pittsb. L. J. 260; 1 Joyce on Injunctions, 75; McClurg's App., 58 Pa. 54; Palmer v. Graham, 1 Pars. 479; Singer S. M. Co. v. Union Button Co., 1 Holmes 253; Adams' Eq., 81, n. 5. (2) As to the propriety of the mandatory order "to restore the status quo, as it existed prior to the acts of the defendant:" Cooke v. Boynton, 135 Pa. 102; Easton Pass. Ry. Co. v. Easton, 133 Pa. 521; Bispham's Eq., § 400; 3 Pomeroy's Eq., § 1359; Lehigh V. R. Co. v. Baker, 27 N. J. Eq. 166; Daniell's Ch. Pr., *1663, n. 8; Whiteman v. Fuel-Gas Co., post, 492. (3) As to the character of the doubt which will operate to prevent the granting of an injunction: Dalzell v. Crawford, 1 Pars. 46; Adams' Eq., 84, n. 1. (4) As to the construction of the contract between the parties: Williamson v. McClure, 37 Pa. 408; Addison on Cont., Abbott's ed., 287, n. 3; 288, n. 5; White v. Smith, 33 Pa. 186. (5) As to the effect of the notice of October 28, 1890: Wills v. Natural Gas Co., 130 Pa. 222.

*Mr. R. B. Stone* (with him *Mr. J. N. Banks, Mr. Samuel Cunningham,* and *Mr. George A. Sturgeon*), for the appellee:

Counsel cited: (1) Act of February 14, 1866, P. L. 28; act of June 12, 1879, P. L. 177. (2) Oil Creek R. Co. v. Railroad Co., 57 Pa. 65; Haight v. Lucia, 36 Wis. 355; Towar v. Barrington, Bright. 253; Richards' App., 57 Pa. 105; Harkinson's App., 78 Pa. 196; North v. Kershaw, 4 Blatchf. 70; Fry on Spec. Perf., § 286; Ballou v. March, 133 Pa. 64; Meason v. Kaine, 63 Pa. 335; Bodine v. Glading, 21 Pa. 50; Marble Co. v. Ripley, 10 Wall. 339; Mayer's App., 73 Pa. 164; Farmers R. Co. v. Railway Co., 53 Pa. 224; Audenried v. Railroad Co., 68 Pa. 370.

PER CURIAM:

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

Decree affirmed.