# CHARLESTON

Powhatan Coal & Coke Co. *v.* Ritz, Judge.

Submitted September 11, 1906.   Decided October 30, 1906.

60  395|
f 60  532|
60     395|
66     310|

1. Mandatory Injunctions—*Necessity and Extreme Hardship.*

   Mandatory injunctions are seldom allowed before final hearing, but, in cases of necessity and extreme hardship, they may be awarded at the inception of the suit and without notice.  (p. 401.)

2. Preliminary Injunction.

   The function of a preliminary injunction, whether it be prohibitory or mandatory, is to preserve the *status quo* until, upon final hearing, the court may grant full relief.  (p. 403.)

3. Status Quo—*Erroneous Conclusion.*

   In awarding such an injunction, the court must determine, provisionally, what the *status quo* is, and an erroneous conclusion as to it, resulting in the awarding of an injunction, not warranted by the allegations of the bill, but within the power of the court to award upon sufficient allegations, is judicial error, but not usurpation, or abuse, of judicial power.  (p. 403.)

4. Erroneous Decision.

   The power of a court to decide erroneously, respecting matters within its jurisdiction, is as clear and undoubted as its power to decide correctly.  (p. 403.)

5. Jurisdiction—*Excess.*

   If, in the progress of a pending cause over which a court has jurisdiction, as to both subject matter and parties, or at the inception thereof, an order, judgment or decree is entered which, for any reason, the court has no power to enter, the entry thereof is an act in excess of the jurisdiction of the court.  (p. 404.)

6. Same—*Bona Fide Claim of Title.*

   A preliminary injunction which deprives a party to the suit in which it is awarded of his possession of property, real or personal, under good title, or a *bona fide* claim of title, without a hearing, is null and void, the awarding thereof being an act in excess of the jurisdiction of the court.  (p. 405.)

7. Jurisdiction—*Want of Same—Subject of Inquiry.*

   Invalidity of a judgment, order, decree, or proceeding, on the ground of want of jurisdiction in the court, may often be ascertained and declared, without showing that it works a breach, or violation, of any constitutional guaranty.  Ordinarily the subject of inquiry in such cases is the limit of the power of the court rather than the nature and extent of the injury done.  (p. 405.)

8. INJUNCTION—*Void—Disobedience—Contempt.*

Disobedience of an injunction, void for want of jurisdiction in the court or judge, awarding it, is not a contempt.  (p. 409.)

9. CONTEMPT PROCEEDINGS—*Writ of Prohibition.*

Contempt proceedings, based upon disobedience of a void injunction, may be prevented by the writ of prohibition.  (p. 409.)

10. PROHIBITION.

A court cannot hear and determine, as a criminal charge, a matter that would not constitute an offense, if charged in such form as would be good and sufficient pleading, if it were punishable.  Such action may be prevented by prohibition.  (p. 409.)

11. VACATION INJUNCTION—*Refusal to Obey—Contempt.*

Refusal to obey an injunction, awarded in vacation, may be punished, as a contempt, in the vacation of the court, by the judge in whose court the injunction is pending.  (p. 411.)

12. PROHIBITION—*Jurisdiction—Non-Jurisdiction.*

Prohibition is not available as a remedy on the ground of the lack of a right of review of the action of the court sought to be prohibited.  If it has jurisdiction and the law makes its decision final, no power to interfere by prohibition exists.  If it has not jurisdiction, prohibition is the special, peculiar and appropriate remedy for preventing action, and, if it is not prevented, the order, judgment or decree will be void and may be disregarded.  (p. 412.)

13. PRELIMINARY INJUNCTION—*Restraining Use of Property—Court of Equity—Power of Same.*

The granting of a preliminary injunction, without notice, merely restraining the use of the property of a party, and not depriving him of its possession, on a bill setting up colorable ground therefor, is not beyond the power of a court of equity, however erroneous the act of awarding it may be.  (p. 412.)

14. APPEAL AND SUPERSEDEAS.

An order of a judge, endorsed on a petition for an appeal from, and *supersedeas* to, an order refusing to dissolve an injunction, the prayer of which is "that an appeal and *supersedeas* may be allowed" the petitioner "staying said injunction," reading as follows:  "Appeal and *supersedeas* allowed as prayed for in the foregoing petition," does not, upon a proper construction thereof, purport to be an order staying the injunction.  Its legal purport is merely the granting of an appeal and *supersedeas*.  (p. 412.)

15. SAME—*Perfecting of —Operation.*

The perfecting of an appeal from an order refusing to dissolve an injunction, together with a *supersedeas*, does not stay the operation of the injunction, nor deprive the court below of power to punish a party for his contempt in refusing to obey it.  (p. 412.)

Original jurisdiction.

Petition of Powhatan Coal & Coke Company against Harold A. Ritz, Judge of Circuit Court *et al.*, respondents.

*Writ of Prohibition Awarded.*

Vinson & Thompson, Rucker, Anderson, Strather & Huhges, for petitioner.

Holt & Duncan, Windham Stokes and Wm. H. Glasgow, Jr., for respondents.

Poffenbarger, Judge:

On the 11th day of August, 1906, the Powhatan Coal and Coke Company, a corporation, obtained from a Judge of this Court a rule in prohibition, requiring the judge of the circuit court of McDowell county and the Pocahontas Coke Company, a corporation, to appear on the first day of the next term of this Court, thereafter to be held at Charles Town, in Jefferson county, and show cause, if any they, or either of them, could, why a writ of prohibition should not be awarded, prohibiting the said judge from proceeding against the said Powhatan Coal and Coke Company upon a rule awarded by him, on the 31st day of July, 1906, requiring said petitioner to appear before him on the 4th day of August, 1906, and show cause, if any it could, why it should not be fined and otherwise punished for its contempt, in violating and disregarding an injunction awarded by said judge on the second day of July, 1906. At said term of this Court, both respondents appeared by their attorneys and filed their joint demurrer to the petition and moved to quash the rule, and the matters of law arising thereon were argued and submitted to the Court.

Petitioner, admitting its disobedience of the injunction, relies, for its protection and justification in so doing, upon want of jurisdiction and power in the judge to award the injunction. It also denied jurisdiction, power and authority in said judge to proceed against it, as for a contempt, because, prior to the awarding of the rule, a motion to dissolve the injunction had been made and overruled and an appeal from the order overruling the motion, together with a *supersedeas*, had been obtained, and perfected, whereby the petitioner insists that the injunction and all the proceedings relating thereto were transferred into this Court, and passed out of the jurisdiction of said circuit judge and his court. It is further con-

tended that the judge in vacation cannot punish for a contempt of this kind.

A statement of the terms of the injunction order, the purport of the bill upon which it was awarded, and some of the proceedings attending the awarding thereof, is necessary to a clear understanding of the ground upon which the petitioner attempts to justify its action in disobeying the order. The Powhatan Coal and Coke Company is engaged in the operation of coal mines and manufacture of coke. It, together with some nineteen other corporations, engaged in the same business, procured the organization of another corporation known as the Pocahontas Coke Company, whose business is the sale of coke manufactured by said twenty companies. The relations of the selling company to each of the others are created and defined by a written contract, the terms of which it is unnecessary to set out in detail. By these contracts, it is made the common agent of the other corporations, for a period of three years, for the purpose of effecting sales of the coke produced by them. After it had acted as such agent for a considerable length of time, the Powhatan Coal and Coke Company, and some others, sustaining the same relation to the agent, became dissatisfied, revoked, or attempted to revoke, the powers of their common agent, refused to make further deliveries to it, and began to dispose of their coke in the market, either through other agencies or by direct sales to customers. Thereupon the Pocahontas Coke Company presented its bills against said companies to said judge in vacation and obtained from him an order of injunction on each of them. The order made on the bill against the Powhatan Coal and Coke Company restrained, inhibited and enjoined it until otherwise ordered from selling, through any agent or agencies, other than the complainant, or in any other way, any of the coke covered by the terms of the contract, which the said complainant had theretofore sold or might thereafter sell before the expiration of said contract in accordance with the terms thereof; and also from refusing to carry out said contract by withdrawing the coke from the complainant as its selling agent; and required the defendant to continue to ship its coke to the order of the complainant as its sole selling agent under said contract. On the 16th day of July, the Powhatan Company moved the

judge in vacation to dissolve the injunction, which he refused to do.

It is hardly necessary to state that want of jurisdiction, in some respect, on the part of the court, judge or tribunal against whom a writ of prohibition is asked is the only ground upon which it can ordinarily be obtained. As to what constitutes a want of jurisdiction, courts, judges and lawyers sometimes differ, and there may be some conflict among the decisions, but all agree that it should never be used except to prevent acts which are not within the jurisdiction of the court, officer or tribunal, sought to be restrained. There may be an entire want of jurisdiction, or the judge against whom the writ goes may have jurisdiction of the subject matter of the controversy and of all the parties interested; and yet render a judgment, or make an order in the cause, in excess of his powers. In both cases there is a want of jurisdiction. The difference between the two cases is in respect to form and degree, rather than principle. As regards the cause of action and parties, there may be a total want of jurisdiction and power over both, or over only one. In such cases it is said the proceeding is without jurisdiction. There may be jurisdiction over the subject matter and all the parties, and still a want of power in the court to render a certain judgment, and, if this judgment is rendered, the judge is sometimes said to have abused his jurisdiction or acted in excess of it. Still it is an attempt to act without power, and a lack of power is a lack of jurisdiction.

Want of power to award the injunction is predicated, first, on the failure to give notice of the application for, and granting of, the injunction; and, second, on the requirement that the defendant continue to deliver to the plaintiff its coke.

There is a discretion in courts of equity to award injunctions without notice to the defendant. Daniel's Chy. Pr. 1665; Spelling Inj. 1074; Beach Inj. section 125; High Inj. section 1579; *Buckley* v. *Corse*, 1 N. J. Eq. 504; *Thomas Iron Co.* v. *Mining Co.*, 38 N. J. Eq. 77. It is very common practice to grant preliminary injunctions without notice in this State, and in vacation as well as in term. The exercise of the power given to judges to issue injunctions in vacation, is governed by the rules that control the performance of the same function in term. Notice of the application may

be dispensed with in either case.   In view of the discretionary power to decide whether the circumstances in any case render it proper to dispense with notice, an improper decision of that question could not amount to more than a mere judicial error.   There is authority to consider—to hear and determine—in every such case, and that is the very essence of jurisdiction.   Section 2 of chapter 133 of the Code expressly leaves the question of the propriety of giving notice of the application in the discretion of the court or judge to whom the application is made.

As to the other ground, namely, the requirement that the defendant continue to deliver its coke to the plaintiff, much of the argument deals with the power of the court generally to issue, preliminarily, mandatory injunctions, rather than with the substance of the thing done in that form.   That courts of equity have the power to issue mandatory injunctions before final hearing is asserted by practically all the courts.   This Court, in *Boyd* v. *Woolwine,* 40 W. Va. 282, reversed a decree dissolving such an injunction, thereby re-instating it, and then perpetuated it, holding mandatory injunction to be the proper remedy for removing obstructions to a private way.   In *Rogerson* v. *Shepherd*, 33 W. Va. 307, it affirmed a decree perpetuating an injunction, requiring the defendant to remove obstructions from a road and restore to the plaintiff an open way through the land of the defendant.   As both of those cases came up on final decrees, the propriety of awarding injunctions preliminarily was not discussed in the opinions, and probably not very carefully considered by the Court.   When the cases reached this Court, they were complete in respect to pleadings and evidence, and the question presented was, whether the plaintiffs were entitled, on the merits, to the relief they prayed, and not whether the courts below had entered erroneous interlocutory orders.   In some other courts, the question has been more carefully considered and the power to grant mandatory injunctions or interlocutory applications upheld.   "There is no general rule against granting relief by mandatory injunction, interlocutorily, where the damage has been completed before the filing of the bill: and there is no difference between the case of injury to easements and injury to other rights."   *Railroad Co.* v. *Baker*, 27 N. J. Eq. 166.   "Com-

plainant, on the undisputed facts of the case, has a right to pass through the defendant's shop and over the heater. Courts of equity exercise a very liberal jurisdiction in the protection of such rights. Mandatory injunctions may, contrary to the general rule, be issued at the very inception of the suit for the protection of such right." *Hodge* v. *Giese*, 43 N. J. Eq. 342. Other cases asserting the power are *Rogers Locomotive Works* v. *Railway Co.*, 20 N. J. Eq. 379; *Herbert* v. *Railroad Co.*, 43 N. J. Eq. 21; *Railroad Co.* v. *Stockyard Co.*, 45 N. J. Eq. 605; *Bailey* v. *Schnitzius*, 45 N. J. Eq. 178. In *Whiteman* v. *Fuel-Gas Co.*, 139 Pa. St. 492, it was held error in the court below to refuse a preliminary mandatory injunction. Power to issue such an injunction is asserted in *Black Lick Manufacturing Co.* v. *Gas Co.*. 139 Pa. St. 448. High on Injunctions, section 2, says: "Mandatory injunctions are seldom allowed before a final hearing, although they may be granted on interlocutory applications. And while a court of equity is always reluctant to grant a mandatory injunction upon an interlocutory application and before final hearing, it may yet do so in an extreme case when the right is clearly established and the invasion of the right results in serious injury." To sustain this proposition a great many decisions are cited which, upon examination, have been found directly apposite. To the same effect see Spelling on Injunctions, section 412; Beach on Injunctions, section 97; Hogg's Eq. Prin., section 232, p. 345; Pom. Eq. Rem., section 636.

Though the power of courts of equity extends to the issuance of interlocutory mandatory injunctions, it is exercised with great caution. Nothing but a case of extreme hardship or necessity will justify it. "Equity will not interfere by mandatory injunction, unless extreme or very serious damage, at least, will ensue, from withholding that relief; and each case must depend on its own circumstances." *Railroad Co.* v. *Baker*, 27 N. J. Eq. 166. "Mandatory injunction is rarely granted before final hearing, and will only be ordered to prevent extreme or very serious damage." *Bailey* v. *Schnitzius*, 45 N. J. Eq. 178. "A preliminary mandatory injunction will be ordered only in case of extreme necessity." *Railroad Co.* v. *Stockyard Co.*, 43 N. J. Eq. 605. "An application for a preliminary mandatory injunction, quite as

much as others, is required to show a clear right; and the case of necessity or extreme hardship." Beach on Inj., section 97.

Such injunctions are awarded for the protection of rights in easements and for the abatement of nuisances more frequently and readily than for other purposes. *Rogers Locomotive Works* v. *Railway Co.*, 20 N. J. Eq. 379. Many illustrations of the use of such writ are found in the English decisions. See *Lane* v. *Newdigate*, 10 Ves. 192; *Ranken* v. *Huskisson*, 4 Sim. 13; *Mexborough* v. *Bower*, 1 Beav. 127; *Greatrex* v. *Greatrex*, 1 De Gex & Sm. 692; *Robinson* v. *Lord Byron*, 1 Brown Chy. 588. Both in this country and in England, it has been used to prevent pollution of streams and the disturbances of rights in natural streams of water, as by alteration of their courses and disturbance of the flow of the water. *Corning* v. *Troy &c. Factory*, 40 N. Y. 191. In England, it is frequently used to prevent disturbance or destruction of ancient lights. *Straight* v. *Burn*, L. R. 5 Ch. App. 163; *Beadel* v. *Perry*, L. R. 3 Eq. Cases 465.

Violation of these rules regulating the exercise of the jurisdiction does not, any more than in any other case of erroneous decision, make the action of the court *coram non judice*. To grant such an injunction when the state of the case, tested by the rules established for the exercise of jurisdiction, does not warrant it, is nothing more than judicial error. It is not an act in excess of jurisdiction. This statement, however, must be taken subject to the qualification that the facts set up in the bill must constitute the basis of some relief which it is within the power of the court to give. In some instances, courts have gone beyond the mere violation of rules of procedure and principles of law, operative within the jurisdiction they possessed, and granted injunctions, under circumstances and conditions, which precluded the exercise of such power at all. Thus, in *Ensign Co.* v. *Carroll*, 30 W. Va. 532, the circuit court, by way of injunction, undertook to obviate the enforcement of a judgment in a justice's court, by substantially giving a new trial of the case in which there had been a verdict by a jury and no new trial could be had under the law. This Court declared that, in so doing, the circuit court had acted in excess of its jurisdiction, and, accordingly, awarded a prohibition, inhibiting the judge

of that court from enforcing the decree. The principles of law underlying the decision are stated in points 2 and 3 of the syllabus as follows: "That the facts involved in the issue having been tried by a jury, cannot be otherwise re-examined than according to the rules of the common law. That a second new trial of the cause, as well as an appeal from said judgment, being expressly prohibited by law, no new trial thereof can be had in a court of equity." There are some limitations upon the powers of every court, whatever its status or the form of procedure may be.

The function of a preliminary injunction, whether prohibitory or mandatory, is defined by Judge Taft in *Toledo &c. Co.* v. *Pennsylvania &c. Co.*, 54 Fed. Rep. 730, 741, as follows: "The office of a preliminary injunction is to preserve the *status quo* until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the *status quo* is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits. * * * Now, the normal condition—the *status quo*—between connecting common carriers under the interstate commerce law is a continuous passage of freight backward and forward between them, which each carrier has a right to enjoy without interruption, exactly as riparian owners have a right to the continuous flow of the stream without obstruction. Since Lord Thurlow's time the preliminary mandatory injunction has been used to remove obstructions and keep clear the streams. *Robinson* v. *Lord Byron*, 1 Brown, Ch. 588; *Lane* v. *Newdigate*, 10 Ves. 192. So an obstruction to the flow of interstate freight must be preliminarily enjoined, even though it requires a mandatory injunction." But if a court should, under some misapprehension of the rights of the parties, as determined by equitable principles, award an injunction which would carry the action of the court beyond the limitation of this rule, and yet not beyond the powers vested in a court of equity, its action would be merely erroneous. Possessing the power to maintain, by injunction, the *status quo*, courts of equity must necessarily

have authority to determine what the *status quo* to be so maintained is or was. If, in the determination of this question, such a court should come to an erroneous conclusion and, having done so, refuse an injunction which it ought to have granted, or grant to a party one to which he is not entitled, the error would not necessarily be jurisdictional. Ordinarily, it would not. If, however, in granting an injunction, a court takes a step which is beyond the powers conferred by law, or which is against an express statutory or constitutional inhibition upon its powers, the act is one in excess of jurisdiction.

It must be apparent, from what has been stated, that the mere form of the injunction is not indicative of any excess of jurisdiction, but this is not decisive of the case. It remains to be determined whether the thing done in this form was beyond the power of the court. What the circuit judge did in this instance, by requiring the defendant to continue to deliver its coke to the plaintiff, deprived it of the possession of property to which it had indisputable and undisputed title, without notice, without a hearing and without an opportunity to be heard. It was coke admittedly in the possession of the defendant, manufactured by it on its own premises in its own ovens, from coal taken from its own mines. In so doing, it is said the judge acted in violation of section 10 of Article III of the Constitution of this State which guarantees that no person shall be deprived of life, liberty or property without due process of law and the judgment of his peers; and, also, of section 1 of the Fourteenth Amendment to the Constitution of the United States, which contains a like guaranty in the form of a prohibition upon the states of the Union.

There are many cases of want of jurisdiction, not necessarily referable to any of the constitutional guaranties, and it may not be necessary to carry this inquiry to a conclusion as to whether or not the action of the judge is violative of the provisions relied upon. In *Wilkinson* v. *Hoke*, 39 W. Va. 403, it appeared that the judgment was violative of a statute, and a writ of prohibition was awarded. In *County Court* v. *Boreman*, 34 W. Va. 87, a judge of a circuit court was prohibited from proceeding to review by *certiorari*, the action of a county court in respect to a matter, concerning

which its action was not reviewable; and, in *County Court* v. *Armstrong*, 34 W. Va. 326, from entertaining an appeal from an order or decision, not appealable. In *McConiha* v. *Guthrie*, 21 W. Va. 134, a circuit court judge was prohibited from including, in condemnation proceedings, properly pending in his court, certain portions of the land asked for by a railroad company, because a statute forbade the taking thereof, on account of its proximity to the dwelling houses of the defendants. In *Hunter* v. *Johnson*, 52 W. Va. 52, a justice of the peace was prohibited from proceeding in a case, because he had made the summons returnable before him in a district of the county, other than the one in which he resided and for which he had been elected. In *Judy* v. *Lashley*, 50 W. Va. 628, and *Morley* v. *Godfrey*, 54 W. Va. 54, criminal prosecutions on account of charges which constituted no offenses were prohibited. In all these cases and others that could be cited, there was want of jurisdiction, and still, not necessarily any violation of constitutional guaranties. The inquiry of this Court went rather to the question of power in the inferior court to do the acts complained of than to the nature or extent of the inquiry which had resulted therefrom to the petitioners; agreeably to the incontrovertible proposition that the jurisdiction by prohibition is primarily supervisory, having for its object the confinement of inferior courts within their jurisdiction and powers, and only incidentally remedial in the sense of giving relief to parties. While the writ is perhaps more remedial in character than it was originally, the principles underlying the jurisdiction and governing its exercise remain unaltered. The subject of inquiry in each case is the extent of power in the court proceeded against. Usurpation of power will be restrained by it, without regard to the nature or extent of the injury wrought by its exercise. Whether it be great or small, or the right disturbed constitutional, statutory or common, is wholly immaterial.

Decisions of this Court are authority for the position that an injunction, awarded without notice or hearing, requiring the defendant to yield to the plaintiff the possession of property, real or personal, which at the time of the awarding of the injunction was in the possession of the former under a perfect title thereto, or a *bona fide* claim of title, is null and void. *Bettman* v. *Harness*, 42 W. Va. 433; *Crossland* v.

*Crossland*, 53 W. Va. 108. In the former case, JUDGE BRANNON, delivering the opinion of the Court, said: ''Possession is *prima facie* evidence of rightful title, because it is one of the elements of title, is sacred, and no court can in any form of proceeding take it from a man without a hearing, without overthrowing the maxim that no man shall be condemned in person or deprived of property without a day in court and due process.'' Point 3 of the syllabus says: ''An injunction as to so much of it as is excessive is void.'' The *Bettman-Harness Case*, related to real estate, but the case of *Crossland* v. *Crossland*, involved personal property. In that case PRESIDENT MCWHORTER said: ''From the allegations and prayers of the bill it clearly appears that the object and purpose of the suit and proceeding was to wrest the possession of the property from the defendant and to hold him in arrest, if need be, until the property could be sold, without giving the defendant an opportunity to assert his rights to the title and possession of the property in a proper proceeding, and under the process of the court. The property was taken from his possession and sold immediately without the rights of the parties being settled. Defendant certainly had his right to a day in court before thus being deprived of property of which he was posssesed and to which he claimed title.'' Beech on Injunctions § 112 says: ''The legitimate purpose and function of a temporary or preliminary injunction is to preserve matters in *statu quo* until a hearing; if it undertakes or if its effect is to dispose of the merits of a controversy without a hearing, or if it divests a party of his possession or rights in property without a trial, it is void. Thus where a railway company had been in possession of a yard for making up its trains for more than twenty years, temporary injunction which restrained it from preventing the occupation of the yard by a street railway company was held to be not merely illegal but absolutely void. And an *ex parte* interlocutory injunction which deprives railroad directors of control may be more than irregular and wholly void as beyond the power of the court.'' In support of this text the following cases are cited: *Calvert* v. *State*, 34 Mich. 616; *Arnold* v. *Bright*, 41 Mich. 207; *People* v. *Simonson*, 10 Mich. 335; *Salling* v. *Johnson*, 25 Mich. 489; *McCombs* v. *Merryhew*, 40 Mich. 725; *Tawas &c.*

*R. Co.* v. *Iosco*, 44 Mich. 479; *Railroad Co.* v. *Judge*, 31 Mich. 456.   To this may be added *Railroad Co.* v. *Railway Co.*, 53 Pa. 234; *Cooke* v. *Boynton*, 135 Pa. 102; *Fredericks* v. *Huber*, 180 Pa. 572; *Baptist Congregation* v. *Scannel*, 3 Grant (Pa.) 47; *Coal Company's Appeal*, 54 Pa. 183; *Brown's Appral*, 62 Pa. 17; *Audenried* v. *Railroad Co.*, 68 Pa. 370; *Latt* v. *Flynn*, 90 Mich. 181; *Railroad Co.* v. *Railroad Co.*, 116 Ia. 681.   Some of them say there is no power in a court of equity to grant such an injunction without a hearing. Others say such injunctions so awarded were improvidently granted.   But others go so far as to say expressly that the action of the court in so granting them is in excess of its jurisdiction.   In *Calvert* v. *State*, this was expressly decided, for there, as in this case, the question arose on a prosecution for contempt predicated upon disobedience of the order.   Maxwell, Chief Justice, rendering the opinion, said: "The question of the street railway's right to appropriate the property in question should have been determined by a trial before the order in question was made, and as it was not the judge acted without authority and the order was void." In *Arnold* v. *Bright*, 41 Mich. 207, Judge Cooley said: "The court of chancery has no more power than any other to condemn a man unheard and to dispossess him of property *prima facie* his and to hand over its enjoyment to another on an *ex parte* claim to it."

Unless there is something in the relation subsisting between the parties at the time of the granting of the injunction, which may be deemed to have amounted to a relative status, consistent with the action of the court, these decisions seem to be decisive of the question of jurisdiction.   For sometime prior to the issuance of the injunction, the defendant had been delivering coke to the plaintiff in the same manner and upon the same terms as it was required by this order to deliver it, and the contract under which such previous deliveries had been made covered a period of time which had not yet expired.   It is not perceived, however, that this can make any difference.   If the contract had been for the delivery of lumber, wheat, corn, cattle or any other article, and the vendor had elected to break its contract and decline to make further deliveries, the remedy of the vendee would have been an action for damages.   Neither a court of law nor a

court of equity could have enforced specific performance; but, if in such a case a court of equity could have done so, relief would have been by a final decree upon a full hearing. It would not have issued a writ having the same force and effect as an execution before giving the defendant an opportunity to be heard, thereby, in effect, rendering judgment, awarding execution and afterwards trying the case.   In those instances in which courts of equity do compel specific performance, namely, contracts relating to real estate, they never award possession until after hearing.   It is a part of the final decree and the writ goes afterwards, not before.   The only apparent exception to this principle is made in respect to common carriers and other public service corporations.   An illustration of it is found in the case of *Toledo &c. Co.* v. *Pennsylvania Co.*, 54 Fed. Rep. 730, from the opinion in which a quotation has already been made.   At page 741 Judge Taft said:   "So an obstruction to the flow of interstate freight must be preliminarily enjoined, even though it requires a mandatory injunction.   The *quasi* public nature of the duty to be performed by the common carriers and the irreparable character of the injury likely to result are ample grounds for this.   The interstate commerce law recognizes the necessity for such a remedy, for in summary equity proceedings at the instance of the interstate commerce commission, provided by section 16, as amended in 1889, express power to issue injunctions, mandatory or otherwise, to prevent violations of the orders of the commission, is given to circuit courts.   In addition to that, a remedy by *mandamus* in the district and circuit courts is given to an interested person to compel compliance by the common carrier with the provisions of the act."   Similarly it has often been held that gas companies, water companies and others of like nature engaged in the public service, are compelled by mandatory preliminary injunctions to restore and continue a supply, pending the determination of the rights of the parties, when such company has cut off the supply under a claim of right to do so.   *Black Lick Manufacturing Co.* v. *Gas Company*, 139 Pa. 448; *Whiteman* v. *Fuel Gas Co.*, 139 Pa. 492; *Glass Co.* v. *Fuel Co.*, 137 Pa. 317.   Jurisdiction and power in such cases is founded upon the duty which the corporation

owes to the public, of whom the plaintiff is one,—something more than a mere contractural relation between the parties.

Our conclusion is that in requiring delivery of the coke, the judge acted in excess of his powers. But does it follow that prohibition will go against his proceeding for punishment of the defendant for disobeying so much of the injunction as is, for this reason, void? Has he, or has he not, jurisdiction to decide in the contempt case that the injunction was void in this respect, in consequence whereof disobedience of it is not a contempt? The pith of the decisions in *Judy* v. *Lashley*, 50 W. Va. 628 and *Morley* v. *Godfrey*, 54 W. Va. 54, is that no court can hear and determine, as and for a criminal charge, that which, when set out as such charge in the form in which it would be well and sufficiently pleaded, if punishable, does not constitute a criminal offense. That principle applied here will grant the writ of prohibition as to so much of the rule as relates to disobedience of that part of the injunction order which is void for want of jurisdiction in the judge to make it. For the following decisions which apply this principle in proceedings to punish as for contempt, disobedience of void orders and decrees, I am indebted to 23 Am. & Eng. Ency. Law 221; *Reg.* v. *Lefroy*, L. R. 8 Q. B. 134; *Cosby* v. *Superior Court*, 110 Cal. 125; *Gordon* v. *Buckles*, 92 Cal. 481 *Williams* v. *Dwinelle*, 51 Cal. 442; *People* v. *Dist. Court*, 6 Colo. 534; *People* v. *Mayer*, 71 Hun. (N. Y.) 182; *People* v. *Carrington*, 5 Utah 531; *State* v. *Superior Court*, 4 Wash. 30. Cases admitting the principle, but holding the want of jurisdiction to make the orders, for disobedience of which the contempt proceedings were pending, did not sufficiently appear, are *Ex parte Hamilton*, 51 Ala. 62, and *State* v. *Scarritt*, 128 Mo. 331.

For the position that after the allowance of the appeal and *supersedeas* the jurisdiction of the judge of the circuit court ceased, and that the injunction was no longer operative, counsel for the petitioner rely upon section 12 of chapter 135 of the Code, providing that this Court or a judge thereof "may allow an appeal, writ of error or *supersedeas*, and may stay proceedings either in whole or in part," and also upon certain decisions which hold that there is an inherent power in a court or judge, on allowing an appeal from an

order refusing to dissolve an injunction, to make an order staying the operation of the injunction. It is said, first, that the statute gives such power, and second, that if it does not, then the power exists independently of statute. For the latter proposition, they cite *Hovey* v. *McDonald*, 109 U. S. 150; *Slaughter House Cases*, 10 Wall. 273; and *Leonard* v. *Ozark Land Co.*, 116 U. S. 465. We deem it unnecessary to pass upon either of these propositions, for the reason that the order made by the judge of this Court, who granted the appeal does not, in our opinion, attempt to exercise any such power. The prayer of the petition is "that an appeal and *supersedeas* be allowed it, (the petitioner,) staying said injunction." The order made by the Judge says "Appeal and *supersedeas* allowed as prayed for in the foregoing petition." This order simply awards an appeal and *supersedeas*. It is not a special order, expressly staying the operation of the injunction. The most that can be said is, that, inferentially, it undertakes to say the effect of a *supersedeas* is to stay the injunction. If it so declares, it does not thereby extend the scope of the writ. A mere erroneous definition of the writ would not have that effect. The important function of staying the operation of an injunction ought to be performed by a positive, affirmative order, having the same certainty as a judgment or decree. Whether it is stayed or not should not be left to mere inference or intendment. As the injunction was not so stayed, even if it could have been stayed, the appeal from the order refusing to dissolve it, accompanied by the *supersedeas*, left it in full force and effect, and the jurisdiction to punish for contempt in disobeying it remained in the court below or the judge thereof. *State* v. *Harness*, 42 W. Va. 414.

So much of the injunction as was prohibitory, restraining the defendant from selling or disposing of its coke otherwise than through the agency of the plaintiff, was within the jurisdiction of the court and not void. Although sufficient grounds for this part of the injunction may not have been shown by the bill, the matters set up, as ground therefor, constituted, at least, a defective bill in equity for injunction, calling for the exercise of the power of the court to consider and determine whether the plaintiff was entitled to the relief prayed for. In granting an injunction which may

not have been justified by the allegations of the bill, but which it was in the power of the court to grant, if the bill had been sufficient, the court merely erred in determining the question of the sufficiency of the bill.    Its power to decide erroneously is as clear and undoubted as its power to decide correctly.    There was no want of jurisdiction but only an erroneous decision, if all that is said in the argument on this question be true.

There is reputable authority to the effect that power conferred by statute upon judges to make orders in vacation, such as preliminary injunctions and orders appointing receivers, carries with it, as incidental thereto, power to enforce obedience by proceedings for contempt.    *Children's Home Society* v. *State*, 57 Neb. 765: *Cobb* v. *Black*, 34 Ga. 162; *Harmon* v. *Wagener*, 33 S. C. 487.    This comports with the general rule that a grant of power to do a thing necessarily implies a grant of power to use appropriate means for its accomplishment; but, whether the principle is applicable here, it is not necessary to determine.    Section 27 of chapter 147 of the Code expressly confers upon judges power to punish, in vacation, certain classes of contempts, including those consisting of disobedience of orders and decrees.    It says. "The courts and judges thereof may issue attachments for contempts, and punish them summarily" in the cases mentioned in that section.    It must be assumed that the legislature used the terms "courts and judges" advisedly, and consistently with its practice of conferring power upon judges, as contradistinguished from their courts, and that it had a purpose in using both.    If judges, as such, may punish for contempts at all, they must do so in vacation, for when acting in term, their acts are those of the courts.    Therefore, to withhold from them authority to entertain contempt proceedings in vacation, would render the word "judges" meaningless and inoperative.    Such a result is forbidden by well established rules of construction.    Omission of the words "in vacation," usually found in this connection, signifies nothing.    Obviously authority conferred upon judges to act, and authority given to them to act in vacation, amount to the same thing.    That the legislature did have a highly important object in view in conferring this

power upon judges, is so obvious as not to require any observations, respecting it.

It seems to be contended that the Constitution forbids the exercise of such powers, otherwise than by courts, but it is conceded and held by the courts generally that such power may be vested in judges. That contempts partake of the nature of criminal offenses, does not preclude legislative power to provide for punishment thereof by summary proceedings. *State* v. *Hansford*, 43 W. Va. 773; *State* v. *Fredlock*, 52 W. Va. 232. That statutory power to act in vacation is sufficient, is the import of the decisions cited to sustain this position of counsel for the petitioner. They contradict the argument.

On the assumption that it is entitled to relief, the petitioner relies upon the want of any other remedy and especially of a remedy by appeal. So far as the judge has acted within his powers, lack of a right to review by appeal is immaterial. "There is no absolute right in a suitor to have a decision against him reviewed, which must be respected in making laws, and, in the absence of a constitutional inhibition, it is within the power of the legislature to prescribe the cases and the courts in which parties shall be entitled to appellate remedies." *Fleshman* v. *McWhorter*, 54 W. Va. 161. In so far as he has acted beyond his jurisdiction, prohibition is the special, peculiar and most appropriate remedy, and an appeal or writ of error is not needed, although, in cases reviewable by such proceedings, they may be used to correct wrongs done by usurpation or abuse of judicial powers. These conclusions and principles render it unnecessary to say whether there is a right of appeal in such cases or not.

Our conclusion is that as to so much of the charge of contempt as consists of disobedience of that part of the injunction which requires the petitioner to continue to ship its coke to the Pocahontas Coke Company, as its sole selling agent under said contract, the writ of prohibition must be awarded, but refused as to the residue of said charge; and that the plaintiff have judgment against the defendant Pocahontas Coke Company for its costs.

*Writ of Prohibition Awarded.*