JOHN DOLLINGER, JR., Inc. v. HORKAN et al. (No. 328.)

(Court of Civil Appeals of Texas. Beaumont. April 5, 1918. Rehearing Denied April 17, 1918.)

INJUNCTION ⬤137(2) — TEMPORARY WRIT — PROPRIETY.

In a suit for an injunction against the use of air hammers in a boiler factory adjacent to a residence district on the ground that the use of the hammers created a noise injurious to the rest, comfort, and health of the inhabitants of the vicinity, it was error to issue a temporary injunction and prohibit the use of such hammers determinative of the whole controversy, since the status quo was thereby destroyed, the plant put out of business pending hearing, and the use of lawful contrivances that had been in constant use for about six years prohibited.

Hightower, C. J., dissenting.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by J. F. Horkan and others against

John Dollinger, Jr., Incorporated, for an injunction. From a decree granting a temporary injunction, defendant appeals. Reversed.

Oliver J. Todd and W. G. Reeves, both of Beaumont, for appellant. E. E. Easterling and R. L. Burgess, both of Beaumont, for appellees.

BROOKE, J. Appellees brought suit against appellant to enjoin the use of air hammers in a certain boiler factory owned by appellant, and situated on the east side of Railroad avenue in Beaumont, in a certain triangle between tracks of the Kansas City Southern and Beaumont Wharf & Terminal Company. It is alleged that the use of the hammers created a large volume of noise, which was injurious to the rest, comfort, and health of plaintiffs, who lived in that vicinity. Appellant was duly cited, and a hearing was had upon the question of granting a temporary injunction, and the district court granted an order as follows:

"Plaintiffs presented their petition and application for an injunction against the defendant, seeking to enjoin and restrain the defendant from operating air hammers in bradding the bolts connecting the iron sheets in repairing and constructing iron and steel boilers at defendant's place of business, on Railroad avenue, between Washington and Milam streets, in the city of Beaumont. Tex., and the judge of the court, E. A. McDowell, considering the said petition and application, ordered that the defendant appear before him in chambers on the 17th day of September, A. D. 1917, then and there to show cause why the said injunction should not issue as prayed for by plaintiffs, and on the said 14th day of November, A. D. 1917, in chambers, came on to be heard the application of plaintiffs for said injunction, and the judge of the said court, Hon. E. A. McDowell, after hearing plaintiff's application and petition for said injunction, and the defendant's answer thereto, and the evidence, and the argument of counsel, is of the opinion that plaintiffs ought to have the said writ of injunction against the defendant as prayed for in their petition.

"It is accordingly ordered and adjudged that the plaintiffs J. F. Horkan, J. G. Ryan, A. J. Buteaud, T. H. De Cordova, G. Gautreaux, R. E. Lloyd, Mrs. I. F. Lincoln, Eugene Hartnett, Geo. McAfee, Hugh Sheffel, Jas. H. Rachford, J. I. Carter, and C. Palumo be awarded said writ of injunction as prayed for by them against the defendant, enjoining and restraining the defendant and its agents and employés and officers from using and operating air hammers at its place of business, on Railroad avenue, between Washington and Milam streets, in the city of Beaumont, Tex., and the clerk of the district court of Jefferson county, Tex., is hereby directed to issue the writ of temporary injunction in favor of plaintiff herein against the defendant, directing and commanding that the defendant, its officers, agents, and employés cease and discontinue the operation of air hammers at its place of business on Railroad avenue, between Washington and Milam streets, in the city of Beaumont, Tex., until further orders of this court. To which action of the court in granting said temporary injunction the defendant then and there excepted and then and there gave notice of appeal to the Court of Civil Appeals in and for the Ninth Supreme Judicial District of Texas, holding session at Beaumont, Tex. And it is further ordered herein that by giving a supersedeas bond in terms required by law, payable in the sum of $1,000, with sureties to be approved by the clerk of this court, that the order herein granted shall be suspended until said appeal is disposed of in the said Court of Civil Appeals, and the Supreme Court."

Many questions going to the merits of the case, and which will be material upon a final hearing, have been discussed in the briefs, but we are of opinion that the state of the record and our determination of this appeal renders their consideration and discussion unnecessary at this time.

Appellant has presented its seventh assignment of error, which we have found to be well taken, and which will dispose of this appeal. This assignment is as follows:

"The trial court erred in granting the injunction in this case pending a final hearing, because the sole legitimate purpose of a temporary injunction is to preserve the status quo pending a hearing on the merits, while in this case the trial court has not by its order preserved the status quo, but has destroyed the same, and has in effect granted all of the affirmative relief which plaintiffs could have obtained on a final hearing, and having entered an order the effect of which would be to destroy defendant's business prior to the hearing of the case on its merits."

The question of conflicts between manufacturing industries and residences adjacent thereto has been fruitful of much difficulty, and the adjustment thereof must necessarily result in more or less hardship to some one, and their determination ought to be carefully worked out by the court, and, except for the preservation of the status quo, ought to be determined only on a final hearing upon the merits.

The gravity of the situation is fully expressed by Mr. Wood in his work on Nuisances (section 6), where he says:

"A party who devotes his premises to a use that is strictly lawful in itself, that is fruitful of great benefits to the community, that adds materially to its wealth, and enhances its commercial importance and prosperity, and whose motives are good, and intentions laudable, may find that, by reason of the violation of the rights that are incident to his business and that cannot be so far correct as to prevent the injury complained of, his works are declared a nuisance, his business stopped, and himself involved in financial ruin. Therefore it is proper and highly important that courts should proceed with extreme caution, and weigh the relative rights of parties with exceeding care, and never declare a business a nuisance except there be such essential injury and damage that the act or thing cannot be justly tolerated without doing great violence to the rights of individuals and the public. People living in cities and large towns must submit to some discomforts, to some injury and damage; must even yield a portion of their rights to the necessity of business. which, from the very nature of things must often be carried on in populous localities and in compact communities, where facilities alone exist upon which it can be kept up and prosecuted."

In this case it is undisputed that defendant's business is located on the border line between business and manufacturing and other industrial property, that same is not unlawful in itself, but, on the contrary, is useful, necessary, and beneficial to the com-

munity, and same has been conducted in its present location for eleven years, and the hammers complained of or some of them have been in operation for at least six years before the filing of the suit. The business began eleven years ago with a capital invested of about $4,500, and has grown until now it is a $50,000 concern, employing about 40 men, and since the entry of the United States into the present world war the business of the concern has doubled in its volume, and it is undisputed that to eliminate the air hammers would require the use of about eight men to do the work which three now perform, and the effect of such an injunction is to destroy, at least for the time being, the operation of the plant as a boiler factory until a new factory can be built elsewhere.

By the above order, the court has practically decided, upon temporary hearing, every issue which would be determined on a final judgment, and in so doing has transcended what we understand to be the purpose of such an order, which is the preservation of the status quo.

In 22 Cyc. 740, the author uses the following language:

"The object is to maintain the status quo, to maintain property in its existing condition, to prevent further impending injury, but not to determine the right itself. Therefore, where the issuance of a preliminary injunction would have the effect of granting all the relief which could be obtained by a final decree, and would practically dispose of the whole case, it will not be granted."

In the case of Simms v. Southern Pipe Line Co., 195 S. W. 288, Judge Pleasants used the following language:

"In the case of Simms v. Reisner, 134 S. W. 278, this court held: That it was 'not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of title, unless the possession has been forcibly or fraudulently obtained by defendant, and the equities require that the possession thus wrongfully invaded be restored, and the original status preserved pending the decision of the issue of title.'"

In the case of Alexander v. Wilkes-Barre Anthracite Coal Co., 245 Pa. 28, 91 Atl. 213, the opinion of the court is indicated by the syllabus, and is as follows:

"Where an owner of a dwelling house sued for an injunction to restrain defendant coal company for working its colliery near his residence, a preliminary injunction was properly denied, where the injuries to plaintiff were not of a pressing character, and an injunction would stop the mining operations of defendant, throw a large number of employés out of work, and cause a large loss to defendant, and the injuries complained of had been endured for some time."

The function of a preliminary injunction is stated in Powhatan Coal & Coke Co. v. Ritz, 60 W. Va. 395, 56 S. E. 257, 9 L. R. A. (N. S.) 1225, as shown by the syllabus in the following language:

"The function of a preliminary injunction, whether it be prohibitory or mandatory, is to preserve the status quo until, upon final hearing, the court may grant full relief."

In Bettman v. Harness, 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566, the effect of the decision is also stated by the syllabus in the following language:

"A preliminary injunction must not do what can only be done after full hearing by final decree, as by changing the possession of realty, or depriving one in possession of its benefits, in any other respect than as to the wrongful act proper to be enjoined; the proper purpose of such injunction being to preserve the present status until a full hearing on the merits shall be had. An injunction as to so much of it as is excessive is void, and ought to be modified on motion."

In 14 R. C. L. 315, the text discussing the scope of a preliminary injunction said:

"But in determining the right to this relief, decision should not be made in reference to matters which will come up for consideration at the hearing of the bill, and in granting the remedy the court must not attempt to do what can be done only after full hearing by final decree, as by changing the possession of realty or depriving one in possession of its benefits; and an injunction as to so much of it as is excessive is void, and should be modified on motion."

The foregoing order, in effect, destroys the status quo by putting out of business, pending a hearing, the plant of appellant, and prohibits the use of lawful contrivances, which have been in constant use for about six years, and, in effect, throws out of employment a large number of men, when on a final hearing a court or jury might find that plaintiffs are not entitled to relief.

From the foregoing authorities, as well as from the decision of this court in the case of City Commissioners of Port Arthur v. Fant, 193 S. W. 346, we have concluded that the above order transcends the purpose of a temporary injunction, and that the assignment referred to above should be sustained. This requires a reversal of the case, and in our judgment renders unnecessary a discussion of its merits, which will come up on final hearing, and upon a more complete record than could have been developed on temporary hearing.

It is therefore ordered that this cause be reversed, and said temporary injunction be hereby vacated.

HIGHTOWER, C. J. I cannot agree with the views expressed in the opinion of the majority of this court, reversing the judgment of the district judge in this case; but, on the contrary, I think the action of the district judge in granting a temporary injunction was warranted by the law, and fully justified by the facts introduced on the hearing.

I therefore respectfully dissent from the opinion of the majority.