## DALLAS HUNTING & FISHING CLUB v. DALLAS COUNTY BOIS D'ARC ISLAND LEVEE DIST. (No. 8706.)

(Court of Civil Appeals of Texas. Dallas. Nov. 26, 1921.)

**1. Levees and flood control ⬬2—Statute relating to reclamation of bottom lands valid.**

Laws 35th Leg. (1918) c. 44, authorizing levee improvement districts for the purpose of reclaiming land lying in river bottoms, is valid and in pursuance of Const. art. 16, § 59.

**2. Eminent domain ⬬74—Construction of levee held not a taking, but only damaging of land, and compensation need not first be provided.**

The construction of a levee to reclaim river bottom lands along land contiguous to a river on the side opposite that on which the levee extends does not amount to a taking, which Const. art. 1, § 17, provides shall not be done without first providing compensation, but is merely a damaging of it within the meaning of such provision, and compensation need not be provided before the damage, assuming that such levee increases the depth of water on such land and causes it to flow with greater violence across it and stand for a longer period of time than formerly, and this is true under Const. U. S., art. 5.

**3. Eminent domain ⬬74—Compensation not first required in absence of physical appropriation.**

Only when there is a physical appropriation of property is the taking such that its owner can first require compensation before the property is taken, under Const. art. 1, § 17.

**4. Waters and water courses ⬬162—Embankment causing water to stand longer upon bottom lands does not create easement.**

The result of constructing embankments on adjacent lands, thereby increasing the depth and velocity of overflow water, and causing it to linger thereon for a longer period of time than it would under natural conditions, does not result in an easement on the land; an easement being acquired only by written grant and by prescription.

**5. Eminent domain ⬬58—Easement in land, not acquired by improvement district by condemnation as against one owning entire title.**

Although Laws 35th Leg. (1918) c. 44, relating to creation of improvement districts for the purpose of reclaiming land lying in river bottoms, expressly confers upon them the right of eminent domain for the purpose of acquiring fee-simple title, easement, or right of way over private and public lands and waters, a mere interest in land or right of use of land in the nature of an easement cannot be validly acquired by condemnation where the entire fee is owned by the person against whom such easement is sought to be acquired, but, if such private owner's interest does not extend beyond a mere easement, that title and right may be taken from the owner only by condemnation in conformity with the provision of Const. art. 1, § 17.

**6. Levees and flood control ⬬9—Levee district held not entitled to keep space between levee and water clear of obstructions.**

Laws 34th Leg. (1915) c. 146, § 57 (Vernon's Ann. Civ. St. Supp. 1918, art. 5581), authorizing a district supervisor "to keep the space between any levee or other improvements and the stream, or streams, the overflow of which is intended to be prevented, free and clear of all obstructions," has no application whatever to a levee improvement constructed under Laws 35th Leg. (1917) c. 44, the purpose of the former chapter being to authorize improvements to confine the water within the stream of the channel, the subject of the latter chapter being to create districts merely designed to divert water from premises far removed from the stream itself after it had already overflowed and extended to the levees constructed, notwithstanding the reference in section 60 of the latter to the former chapter.

**7. Injunction ⬬133—Temporary mandatory injunction not granted where it will inflict great injury.**

A temporary mandatory injunction which would require the removal of a completed levee built at an expense of $400,000 should not be granted to a landowner whose injuries by reason of the levee are comparatively small, but such landowner should be required to obtain compensation by recourse to a remedy at law.

**8. Injunction ⬬133—Not purpose of temporary injunction to finally dispose of entire subject-matter.**

The purpose of a temporary injunction is to maintain or restore the status quo until upon a final hearing court may dispose of the controversy by granting full relief to the party whose right the law and the facts support, and a temporary mandatory injunction should not be granted where it will effectually and finally dispose of the entire subject-matter of the suit.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Dallas Hunting & Fishing Club against the Dallas County Bois D'Arc Island Levee District. From an order refusing to grant a temporary mandatory injunction, plaintiff appeals. Affirmed.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellant.

Clark & Clark, of Dallas, for appellee.

HAMILTON, J. This is an appeal from an order refusing to grant a temporary mandatory injunction.

Appellee is a levee improvement district organized under the provisions of chapter 44, General Laws of the Thirty-Fifth Legislature, for the purpose of reclaiming land lying in Trinity river bottom.

The district as laid out and incorporated

---

⬬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

includes a portion of appellant's land. However, after the district was created and construction had begun, a controversy between appellant and appellee arose with reference to taking a portion of appellant's land and building a levee upon it. The dispute caused appellee to deviate from its purpose to build the levee on appellant's land, or, at least, after appellant began to make contentions against the original plan of construction of the levee upon and with reference to its land, appellee changed the plan and altered the course and position of the levee so as not to touch any part of appellant's land and left it entirely outside the territory to be circumscribed by the levee walls. With appellant's land thus excluded, appellee began its work of building the levee on January 11, 1921. Appellant filed its application for a restraining injunction praying that a temporary injunction issue pending a final hearing. An order was entered by the trial judge when the application for a temporary injunction was filed, designating January 22, 1921, as a date for hearing it, after notice to appellee. Whatever reason (and none is disclosed by the record) for it that may have existed, no action was taken on the application on the date so set for a hearing and the application pended as originally filed until August 1, 1921. On that date a pleading designated as a supplemental petition and motion for a mandatory injunction was filed.

This last pleading, as well as the answer also filed on August 1, 1921, revealed that in the space of time which had intervened since the original petition was filed the levee wall had been completed in the place and course projected and designated after the abandonment of the location against which appellant had originally protested.

The substance of the complaint embodied in the first application for injunction may be succinctly stated as follows: Appellant is a corporation authorized by law to maintain a hunting and fishing club on 836 acres of land on which are located lakes, this land lying along and being bounded by the Trinity river, and which, including the improvements and equipment, is of greater value than $60,000; that such premises are devoted to the uses of hunting and fishing by its members, as well as being used by them for health and recreation; that the buildings are located on land which is above the ordinary overflow of Trinity river; that appellee was proposing to erect a part of its levee along a line on a side of the land, so that the land would be between the levee and the river; and that the levee, if constructed, would divert the water which flowed out over appellant's land in ordinary overflows and cause the water from the river to flow with great violence upon appellant's land and improvements thereon, almost totally destroying the buildings and equipment and rendering the premises unsafe for appellant's purposes and also unsafe as a place to reside.

It was alleged that the law under which appellee was organized is void, and that particularly it is invalid so far as it gave appellee authority to build and maintain a levee or cast the waters from the river upon the overflowed land of appellant without the latter's consent and without first making adequate compensation as provided by the terms of the state and federal Constitutions prescribing the manner of exercising the right of eminent domain. It was further alleged that, if the legislative act upon which appellee's organization and existence were founded were at all valid, then it validly authorized levee districts to be formed only by building levees on, along, and contiguous to streams, and that appellee had not located its levee district along and contiguous to the river, but, on the contrary, had located it away from the river so that appellant's land was left between the river and the levee district without protection and without the benefits contemplated by the legislative enactment, while it would suffer the disadvantage of land thrown between the levee district and the river; that, if the act were valid in any wise, it provides and contemplates only that levee districts shall extend to the channel of a river whose waters are levied against and shall be built along and contiguous thereto, and hence, the levee district under construction not being so located and designed, no lawful authority permitted further procedure.

The petition is voluminous and sets forth other allegations, which we do not consider it necessary to state or discuss with particularity.

The supplemental petition and motion for mandatory injunction filed on August 1, 1921, as above stated, alleged that the levee had been "built and completed alongside of plaintiff's property and for some distance below and above the same, so that the property of plaintiff is now subject to overflow by the impounding of waters upon its land which formerly spread themselves over adjacent land now segregated from plaintiff's land by such levee."

There was a prayer that a temporary mandatory injunction issue requiring that appellee make openings in the levee to permit the the waters, which would otherwise be impounded on appellant's land, to spread over the adjacent land, as they formerly did in times of overflow before the levee was built.

The record as a whole supports the conclusion that the land belonging to appellant is entirely excluded from the area comprehended within the limits of the levee actually constructed, and that no part of the levee rests upon any of appellant's land. The

levee, it appears, was designed and constructed to protect the land around which it is built by excluding from it the waters which overflow from the river channel in rainy seasons and spread over it as they spread at such times over appellant's land. The levee district and appellant's land lie on the same side of the river, appellant's land intervening between the river and the land within the levee, and all the land affected lies in the Trinity river bottom and is what is generally known as "bottom land" which expression in this part of the country is generally understood to mean more or less level land attiguous to streams and stretching away to the uplands and over which the water from streams spread when the rains come and increase the volume of water drained into the channel beyond its capacity to carry it.

[1] The validity of the legislative act under which the levee district was created cannot be questioned plausibly. Whether or not it could be assailed as a wrongful exercise of police power if its authority rested purely in such governmental right as the inherent police power is of no concern, because unlike the ordinary legislative act bringing into action this governmental power, it is founded upon the express mandate of the Constitution.

The law was passed in pursuance, not only of a right, but of direction, embedded in section 59 of article 16 of the Constitution of Texas, which was adopted as an amendment in 1917, and which is as follows:

"The conservation and development of all the natural resources of this state, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semiarid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forest, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the state are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

"There may be created within the state of Texas, or the state may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the Constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

The law provides for the condemnation of land when taken by levee districts through the condemnation proceedings prescribed by article 6505 et seq., Revised Civ. Statutes, relating to condemnation by railroads. Section 9 of chapter 44, Acts 35th Leg. 4th Called Sess.

[2] Appellant advances the propositions that the construction of a levee alongside of land contiguous to a river on the side opposite that along which the levee extends, as is stated to be the case in this instance, amounts to a taking, which article 1, § 17, of the Constitution provides shall not be done without first providing compensation. And appellant also asserts the proposition that the construction of the levee in the circumstances and manner reflected in this case, although the levee itself does not, it seems, touch appellant's land, results in an easement in behalf of appellee over and on appellant's land.

We are unable to bring ourselves into agreement with either of these positions. Section 17 of article 1, State Constitution, secures every person against the exercise of the governmental right and power of eminent domain without adequate compensation, and article 5 of the United States Constitution also provides that private property shall not be taken for public use without just compensation. Under both instruments the exercise of the power of eminent domain is regulated. But, so far as the question presented enters this case under the record, the provisions of the state Constitution alone concern us, because there is no specific inhibition in the United States Constitution against taking private property in any event until after compensation is paid; whereas, on the other hand, the state Constitution provides that—

"No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, * * * and when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money."

It is to be observed that the express requirement inheres in this provision for compensation to be first made when property is actually taken for a public use and that this requirement does not obtain when the property is damaged or destroyed for a public use. The question here to be determined then is: Do the facts of the case reflect an actual taking of appellant's property or infliction of a damage upon it consequentially flowing from acts committed upon adjacent property? In other words, granting that the building of the levee as described to prevent the water from the river flowing upon the lands within the confines of the levee district will increase the depth of the water on appellant's land and cause it to flow with greater violence across it and stand for a longer period of time than formerly upon it, do these facts constitute a taking of the prop-

erty or merely a damaging of it within the meaning of the Constitution?

[3] In our opinion, a fair construction cannot render the acts complained about an actual taking of the property for the use of the levee district. We do not think the view that the diversion of overflow water from land in any case so that it will flow with an increased depth and violence over adjoining land and stand longer upon such adjoining land could ever be said to constitute a taking of the land, but we are not under the necessity of undertaking to establish this declaration as our own independent view. The above-quoted constitutional provision has already received judicial construction which we think applies to the facts out of which the contention before us arises, and sustains its application to the facts of this suit as requiring the effect we have given it. We regard it as settled by the decisions that only when there is a physical appropriation of property is the taking such that its owner can first require compensation before the property is taken. This view is announced in the following cases: McCammon & Lang Lbr. Co. v. T. & B. V. Ry. Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870; City of Marshall v. Allen, 115 S. W. 849.

Appellant relies upon the case of Fort Worth Improvement District v. City of Fort Worth, 106 Tex. 148, 158 S. W. 165, 48 L. R. A. (N. S.) 994, as authority supporting its contention. We think an examination of the facts of that case, as well as a study of the reasoning pursued by the court, very clearly demonstrates that it has no controlling application to a case of the character under consideration here. The Fort Worth improvement district appears to have been organized under an act of the Legislature enacted in 1909 (Laws 1909, c. 85) which authorized the formation of levee improvement districts as municipal corporations for the purpose of constructing levees along the banks of streams which recurrently overflow, so as to reclaim lands lying in the valleys of such streams from destructive inundation. The act of the Legislature which created the improvement district did not contain any provision for the payment for land taken or for damage done by the construction, maintenance, or repair of any levee or other improvement made under the provisions of the law. On the contrary, the law expressly provided that no county or improvement district, or any taxpayer therein, should be liable for damages occasioned in the construction or maintenance of a levee or any other improvement made under the provisions of the law. This provision of the law was held to be in conflict with the above-quoted provision of the Constitution of the state and actually void, and, for that reason, it was held that an injured party could enjoin the construction, maintenance, or repair of a levee built in compliance with the enactment in case of property being taken, damaged, or destroyed without compensation.

The city of Fort Worth is a municipal corporation and for many years prior to the creation of the improvement district was a riparian owner of certain lands along the Trinity river, and had maintained two pump stations on its riparian lands for 25 years before the construction of the levee was begun. The levee district undertook to build a levee along the bank of the river on the side of the river opposite that on which the pump stations were located. It appeared that prior to the construction of the levee the ordinary overflow of water from the river, or even the highest flood waters, did not flow into the pump stations maintained by the city, because the waters spread out over the valley of the river in a continuous stream in cases of overflow and found its way back into the main channel further down the stream, but that after the construction of the levee its effect would be to throw all the overflow water from the channel of the river upon the side thereof opposite from that on which the levee was being constructed, and thereby submerge and destroy the pump stations.

A case was made by the facts where one riparian owner by heightening the bank of the river on his side of it for his own protection was throwing the entire volume of the overflow water over upon and injuring the property of the opposite riparian owner, and it might be said that it was as if the improvement district was destroying the opposite bank by erecting an embankment to reclaim its land and thereby changing the natural flow of the water and casting it upon the city's property.

In the instant case nothing is done to change the course of the water as it leaves the river. The land of the improvement district in this case is not riparian in the strict sense of the word, and its construction of the levees where they are located is not the act of a riparian owner. As above stated, appellant's land lies between the river and appellee's land, and, as we understand the description of the situation which is made to exist by building embankments, it is that the same water which has always crossed appellant's land after leaving the river is merely shut out from going upon the levee district's land after traversing appellant's land. Furthermore, as before stated, we gather from the record that the lands belonging both to appellant and to appellee are such as are generally designated as "bottom lands" upon which the waters uniformly come when excessive rains fall or the river overflows from any cause. So that, while much is said about the rights of riparian owners in the arguments presented to us we do not think that any right strictly appertaining to such owners under the law governing the

uses of riparian lands can be said to apply. Steamboat Co. v. Steamboat Co., 109 U. S. 672, 3 Sup. Ct. 445, 4 Sup. Ct. 15, 27 L. Ed. 1070; Town of North Hempstead v. Gregory (Sup.) 66 N. Y. Supp. 28; Bardwell v. Ames, 39 Mass. (22 Pick.) 333.

Moreover, while the respective positions of the improvement district and the city of Fort Worth in the case cited by appellant were exactly those of riparian owners, yet no question of the taking of property as contradistinguished from damaging property was involved in that case. The court treated the facts presented altogether from the viewpoint of the right of compensation for damage on the part of the city, and did not undertake to treat the distinction between the right to an injunction to prevent the taking of property for public use before it is appropriated and the right to peculiar damage inflicted upon it as a result of constructing a piece of work to be used as, or in connection with, a public enterprise.

[4] The result of constructing the embankments on land other than that of appellant and merely adjacent to appellant's land, thereby increasing the depth and velocity of the overflow water on appellant's land and causing it to linger thereon for a longer period of time than it would under natural conditions, does not result in an easement in appellant's land over its protest and objection so prominently present in this case. As we understand the law of easements, an easement is acquired in only one of two ways—one is by written grant; and the other is by prescription.

[5] It is true that the act providing for the creation of levee improvement districts expressly confers upon them the right of eminent domain for the purpose of acquiring fee-simple title, easement, or right of way over and through private and public lands and waters but we think that a mere interest in land or right of use of land in the nature of an easement could not be validly acquired by condemnation under eminent domain where the entire fee is owned by the person against whom such easement is sought to be acquired under condemnation proceedings. Of course, if such private owner's interest did not extend beyond a mere easement, that title and right could be taken from the owner only in conformity with the provisions of section 17, art. 1, of the Constitution. However limited his title might be, the constitutional restriction relating to the exercise of eminent domain would extend its protection equally to the private owner, but we do not think that any right less than his entire fee could be acquired without his consent for a public use.

[6] Section 60 of the act from which appellee derives its existence and authority provides that—

"In all matters not herein provided for levee improvement districts created hereunder shall be governed by the provisions of chapter 146 of the General Laws of the regular session of the 34th Legislature."

Section 57 of the latter act (Vernon's Ann. Civ. St. Supp. 1918, art. 5581) authorizes a functionary designated as district supervisor—

"to keep the space between any levees or other improvements, and the stream or streams the overflow of which is intended to be prevented, free and clear from all obstructions."

Appellant insists that, the law under which appellee is created and is operating having thus by reference incorporated the above-quoted provision from chapter 146 of the General Laws of the Thirty-Fourth Legislature, the right is thereby given appellee to go upon appellant's land at any time and clear away any obstructions which may be on it tending to prevent the flow of water over it. This, says appellant, is clothing appellee with the absolute right of entry and control over appellant's land so as to constitute an actual appropriation of it, which cannot be made until compensation has been provided or paid in compliance with the requirements of section 17, art. 1, of the Constitution, relating to the taking of private property for public use. Both chapter 44 of the Laws Enacted by the Fourth Called Session of the Thirty-Fifth Legislature and the above-mentioned chapter 146 of the Acts of the Thirty-Fourth Legislature (Vernon's Ann. Civ. St. Supp. 1918, art. 5530 et seq.) are long and cumbersome and contain numerous provisions, which circumstance renders it tedious to say precisely what is authorized and what is not authorized by the one and the other. However, we think it manifest that the purpose of chapter 44 was to create conservation and reclamation districts to reclaim river bottom lands from overflow waters which come upon them, by building levees to stop the water at the edge or boundary of the levee districts, whether the levee district may comprehend lands removed a distance from the channel of the stream itself or which may abut upon the channel. On the other hand, we think it equally clear that the purpose of chapter 146, above referred to, was to make provision for the construction and maintenance of levees and other improvements along rivers and other streams by building the embankments along and contiguous to the channels themselves, to prevent the stream from overflowing. The law in the one instance provides for the protection of lands against the waters from rivers and streams after they have already overflowed from them, and the other provides for confining the waters within the channels so as to prevent overflow. Accordingly we think section 57 of said chapter 146 has no application whatever to the character of levee improvement constructed by the appellee under authority of

chapter 44. The purpose of chapter 146, Laws of the Thirty-Fourth Legislature, being to authorize improvements to confine the water within the stream of the channel, section 57 was inserted to provide authority for keeping the entire space between the embankments open so that obstructions might not choke the stream and cause the water thereby to reach such a high level as to break over its confines and thus defeat the purposes of the embankments authorized by the act. If this view is correct, as we think it is, then it is manifest that the section of law above quoted could have no application to a levee district designed to divert water from premises far removed from the stream itself after it had already overflowed and extended to the levee constructed.

[7] The foregoing has the effect to dispose of all the specific propositions of law advanced by appellant adversely to its contentions, but, if the soundness of the different positions taken by it were conceded and the incorrectness of our views could be established, yet there exists in this case still another reason why we think the action of the court below ought to be upheld, and that is that it appears to us that whatever rights appellant may have in the premises ought now to be established and compensated by recourse to a remedy at law.

The levee has already been constructed at a cost, according to the unchallenged statement of appellee's counsel, of more than $400,000. To require the destruction of the levee, in the nature of things, would be to undo all the work done at this great cost and to destroy all the advantages arising from the reclamation wrought by it. To grant the temporary mandatory injunction would be practically to compel the restoration of the previously existing conditions to remove which the levee was built and the funds of the levee district expended. Whatever the reason may have been for it, appellant failed to invoke the action of the court until after the levee had been completed, and permitted the original application for injunction to pass without action for a period of almost seven months, during which appellee, in apparent good faith and without any unconscionable design, proceeded with the work to completion. The parties being in the respective attitudes thus brought about, we believe that the doctrine of the "balancing of injuries," sometimes mentioned by the authorities, ought to be applied. It seems to us evident that to comply with appellant's solicitations would be to inflict upon appellee a much greater injury than would result to appellant by denying them. For this reason we believe the trial court, in the exercise of its sound discretion can be justified in refusing to grant a temporary mandatory injunction. Oliver v. Forney Cotton Oil & Ginning Co., 226 S. W. 1096; Railway Co. v.

Oakes, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835; Cohen v. Houston, 176 S. W. 809; Printing & Dyeing Est. v. Fitch, 1 Paige (N. Y.) ch. 97.

[8] Again, as argued by counsel for appellee, to have granted the temporary mandatory injunction would have been effectually and finally to dispose of the entire subject-matter of the suit. Nothing would have been left for a final judgment of the court to operate upon. A temporary injunction is not intended to perform such function. On the other hand, the purpose of it is to maintain or restore the status quo until upon a final hearing the court may dispose of the controversy by granting full relief to the party whose right the law and the facts support. Dollinger v. Horkan, 202 S. W. 978; Norwood v. Leeves, 115 S. W. 53; Powhatan v. Ritz, 60 W. Va. 395, 56 S. E. 257, 9 L. R. A. (N. S.) 1225; 22 Cyc. 740.

In the situation presented we think it was equity to deny the temporary mandatory injunction, and, under the circumstances, whatever damage or injury may be suffered by appellant, if established, must be compensated by recovery in a suit at law.

The judgment is affirmed.

---

&copy;=&gt;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes