### TEXARKANA & FT. S. RY. CO. v. MILLER-VIDOR LUMBER CO. (No. 1356.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 28, 1926.)

**1. Injunction ⚖➝132—Preliminary injunction is issued to preserve status quo until final hearing.**

Function of preliminary injunction, whether prohibitory or mandatory, is to preserve status quo until final hearing.

**2. Appeal and error ⚖➝1100—Evidence on appeal from temporary injunction will not be reviewed where all available evidence had not been introduced.**

On appeal from order granting temporary injunction, court will not review evidence where all available evidence had not been introduced, and will not announce law applicable to its partial development.

**3. Injunction ⚖➝135—Temporary injunction for each party against the other held proper in railroad's suit against lumber company relative to right of way.**

In suit by railroad against lumber company relative to right of way, issuance of temporary injunction in favor of each party against the other *held* not abuse of discretion, where any other order would have disturbed previous long-enjoyed possession and valuable property rights.

Appeal from District Court, Jefferson County.

Suit by the Texarkana & Ft. Smith Railway Company against the Miller-Vidor Lumber Company. From an order granting defendant a temporary injunction, plaintiff appeals. Affirmed.

Orgain & Carroll, of Beaumont, for appellant.

Oliver J. Todd, A .D. Moore and Charles S. Pipkin, all of Beaumont, for appellee. .

WALKER, J. This is an appeal from an order granting appellee a temporary injunction against appellant. The nature of the case, the issues involved, and the judgment of the trial court on a hearing to dissolve the injunction are thus stated by appellant.

"This case originated in the district court of Jefferson county, Tex., by petition filed by appellant, Texarkana & Ft. Smith Railway Company, against the defendant, Miller & Vidor Lumber Company, wherein the railway company alleged that it was the owner of an easement on and over certain tracts of land in said petition described, which easement was conveyed to it by deed of the Miller & Vidor Lumber Company of date March 31, 1906. Said petition further alleged that there was upon this strip of land a railroad switch track owned and operated by the railway company, and that the defendant, Miller & Vidor Lumber Company, its servants, and agents were entering upon said property contrary to the rights of the railway company and were tearing up and removing therefrom the rails and ties thereon. Petition prayed for an injunction. The judge of the Sixtieth district court on the 22d day of June, 1925, granted a temporary writ as prayed for in said petition. The plaintiff railway company filed its bond as provided in the court's order, and writ of injunction was issued and served upon defendant.

"Upon the 2d day of July, 1925, the defendant, through its attorneys, filed a motion to dissolve said injunction, and by way of cross-action prayed for an injunction against the plaintiff from operating its trains on said track. As a reason therefor, defendants alleged that the deed of date March 31, 1906, as set up by plaintiff railway company, executed by the Beaumont Sawmill Company, was invalid and without effect, for the following reasons:

"(a) That there was no consideration paid therefor.

"(b) That. the purported easement granted, being a mere gratuity, was an easement merely for the purpose of serving defendant's industry and for none other.

"(c) That while said instrument purports to have been executed by the vice president of the Beaumont Sawmill Company, that if it purports to convey a right of way for purposes of serving industries other than the defendant, then the vice president of said company, who made said conveyance on behalf of the company, was without any authority whatsoever from the company to make the donation.

"(d) That by the terms of said purported agreement set up by plaintiff, it was provided that said easement should continue only so long as plaintiff should operate said spur track upon said property.

"(e) That so much of said track as extended from the ends of the planer siding as originally construed and running along the side of the sawmill and skidway of said company down to the bank of the Neches river, it was contemplated by said agreement that the track should be used by the plaintiff railway company only for the purpose of delivering logs to the defendant, Miller-Vidor Lumber Company.

"Defendant further alleged that shortly after the date of said deed, the railway company ceased to use the track across said property leading to said skidway, but, on the contrary, entered into a trackage agreement with a subsidiary corporation organized for the purpose of hauling logs, said corporation being known as.the Beaumont & Northern Railway Company, and since the year 1906 so much of said track as extends from the defendant's mill and planer

to and down the Neches river had been wholly abandoned by the railway company, and no attempt made to use the same, and by the terms of said alleged contract set up by said plaintiff, the said alleged easement wholly terminated about the year 1906, and that since said time the defendant had been in peaceable, continuous, and adverse possession of said land, using and enjoying the same, and claiming absolute rights therein, and recognizing no rights in the plaintiff, having notified the plaintiff railway company that they recognized no rights in said railway company to said land, and that the railway company has in writing wholly disclaimed any interest in said land and has agreed to recognize and has recognized the claim of the defendant thereto.

"Defendant further alleged in that connection that in November, 1918, plaintiff company, through A. Leckie, division engineer of plaintiff company, wrote the defendant, E. H. Green, handing him a plat showing the ownership of tracks on defendant's property which showed that the track from the west line of said property down to and alongside defendant's sawmill was a track owned by the Beaumont Sawmill Company and maintained by the plaintiff company at the expense of the Beaumont Sawmill Company, and also showed a parallel track taking off from said main track at a point between the office and the lumber shed of said lumber company, and extending eastward beyond the planing mill and boiler room was also the track of the defendant company, and showing said track to extend from said point beyond the skidway on the Neches river to be tracks claimed by the railway company, but maintained at the expense of the lumber company, and further showing a track 527 feet beyond that point running down to the Neches river to be owned and maintained by the lumber company.

"Defendants further alleged that the said Leckie, acting for the railway company, and E. H. Green, acting for the Miller & Vidor Lumber Company, agreed that the steel in said tracks was owned as above set forth and the land was owned by defendant company. Defendant Lumber Company further alleged that the railway company had never had any just or equitable claim to said tracks, and had never made any assertion to the title of the land upon which they were located, and that the easement set up in its petition was a voluntary easement merely for the purpose of access to defendant's plant, and for no other purpose, and also authorized only for such purpose, and executed for such purpose only, and if construed for any other purpose, the Beaumont Sawmill Company did not authorize the same, and that the greater part of the track in question claimed by the defendant had not been used by the railway company for more than 18 years, is not now being used by it. the action of the plaintiff as set up in its petition is a pretended claim to property it had never bought.

"Defendant further alleged that the strip of land as claimed by the plaintiff would include much of its planing mill, sawmill, dolly ways, boiler houses, skids, and other properties necessary for the operation of its sawmill plant, and would greatly harass, embarrass, and injure the defendant in the conduct of its business, doing irreparable injury therefrom.

"On the 3d day of August, 1925, the plaintiff filed its first amended original petition in lieu of original petition, and in addition to the allegations made in its original petition as set out, defendant alleged that from the date of the granting of said easement on March 31, 1906, the railway company have maintained on said property a standard gauge railroad track and has continuously operated trains thereon, and since March 31, 1906, the railway company has been in peaceable, continuous, and adverse possession of said easement and right of way, using and enjoying the same and claiming absolute right therein under said deed, and recognizing no right on the part of defendant contrary to its rights under said easement.

"On the 3d day of August, 1925, plaintiff railway company filed its answer to defendant's motion to dissolve, and after certain exceptions thereto plaintiff denied all and singular the allegations as set forth in defendant's answer, except as to the existence of that certain trackage arrangement between the railway company and the defendant company, but it denied that the trackage arrangement looked solely to the service of the defendant or that said trackage arrangement had the effect set forth in defendant's answer.

"The plaintiff denied all matters set forth in defendant's answer as to any agreement made between A. Leckie and the defendant company having any such effect as that alleged in defendant's answer. Plaintiff further set forth that A. Leckie was at the time an agent and employee of the United States Railway Administration, which was functioning in behalf of the United States government, and at a time when the plaintiff had no control of its property, and that plaintiff was in no manner bound by the action of the said Leckie except as the same was adopted by it.

"Plaintiff specially denied that the alleged agreement between Leckie and the defendant company had the effect attributed to it, or was in fact as alleged by defendant in its answer, and plaintiff alleged that, to the contrary, it was especially understood between said Leckie and the defendant that the matters agreed upon had reference to the ownership of tracks only, and did not have reference to the right of way upon which the same was situated.

"Having reference to the allegations in paragraph 4 of defendant's answer, wherein defendant alleged that the easement contract did not represent the agreement of parties and seeking to give it an interpretation inconsistent with its terms, the plaintiff pleaded in bar of such contention the 2, 4, and 10 year statutes of limitation.

"Defendant further alleged that if said deed was given without authority from said company which was expressly denied, that said deed was delivered upon the representation of the vice president, the then acting president of the Beaumont Sawmill Company, that he did have such authority to so execute the same, and said deed was accepted and acted upon by the plaintiff railway company as being executed in conformity with the authority of the company, and relying thereon the plaintiffs spent large sums of money in the improvements and maintenance of said property, all in reliance upon the statement of said officers of said company. That the defendant company held said officer out as being authorized to execute said instrument, and was thereby estopped from claiming that

the same was executed and delivered without authority of the said company.

"Plaintiff further asserted that if said deed was executed by the officer without the direct authority, that same was executed with the knowledge and with the consent of the directors and stockholders of said company, and said directors and said stockholders of this company held out to this plaintiff that the vice president was clothed with proper authority to execute and make said deed, and that the said vice president in the making acknowledgment to said deed expressly under oath stated that he was duly authorized to execute said instrument, and the defendants are now estopped to claim that the same was executed without authority.

"Plaintiff also alleged that if said deed was executed without authority, it was executed by an agent and officer of the company who was held out by the plaintiff to have authority to execute the same, and that the defendant had recognized and adopted the acts of said agent and officer in executing and delivering said deed, and had induced the plaintiff to believe and act upon the belief that the said officer did have authority to execute said deed as claimed by him, and the defendant at this late day, more than 18 years after the execution of said deed, is estopped from claiming the same was without authority.

"Plaintiff further asserted that if said deed was executed without authority of the company, yet, nevertheless, the plaintiff acting under the terms of said deed constructed and maintained a railroad track upon the land in said deed described, paying all expenses thereof except as to ties as provided in the deed, and said track had been used for the mutual benefit of the Beaumont Sawmill Company and the Miller & Vidor Lumber Company, and that the Miller & Vidor Lumber Company and its predecessors in title have enjoyed the benefits of said track for more than 18 years, has continuously recognized the plaintiffs' rights therein without objection thereto, or objection to the deed under which plaintiffs hold, and defendants and its predecessors in title have therefore acquiesced in the action of the officer of the company in the making and delivering of said deed, and has of all things ratified his action therein.

"The plaintiff further denied that said deed was executed without a consideration being paid therefor, and in that connection plaintiff showed that prior to the execution of said deed by the Beaumont Sawmill Company the land upon which same is situated was owned by the United Lumber & Export Company, and in 1906 there was an agreement between the plaintiff and the United Lumber & Export Company that said track should be constructed, and it was provided that the cost of construction of said track and the maintenance of same should be borne by the United Export & Lumber Company, the said contract further providing that certain liabilities be assumed by the United Lumber & Export Company and provided that certain other burdens incident to the use and operation of said track be assumed by the said lumber company, and that said contract should continue for a period of ten years; that soon after making of said contract, it was agreed between the plaintiff and the United Lumber & Export Company, the then owner

of said property, in lieu of the contract under which said track was to be constructed, and as a consideration that the lumber company be relieved of said obligations in said contract, that the United Lumber & Export Company would execute to the railway company a permanent easement and right of way to said land for railway purposes, said easement to continue for so long as any part of same is used for railroad purposes, except the tracks placed thereon should be removed and not replaced and trains operated over same, and that thereafter and prior to the execution of the deed in question, the United Lumber & Export Company sold and transferred its properties to the Beaumont Sawmill Company, and one of the considerations for such acquiescence by the Beaumont Sawmill Company being that it would assume all obligations of its predecessors in title, and that said deed by the Beaumont Sawmill Company was executed in consequence of such agreement on the part of the United Lumber & Export Company, as well as for the benefit of the Beaumont Sawmill Company in the service it would secure from the railway company, and that since said time the railway company has served said companies and its successors, including the defendant, as a railroad, and have continuously used said track. The plaintiff also pleaded in bar to all contentions of defendants the 2, 4 and 10 year statutes of limitation.

"And, further pleading in answer to said motion, the plaintiff alleged that the Beaumont Sawmill Company, which had made the deed to it in 1906 while the legal owners of said land, has long since been out of business and was not in existence, and that during the life of said corporation, its officers and agents in all things recognized the validity of said deed and in no manner denied the same, said company enjoying the benefits arising out of the use of said track by the plaintiff, and at this late day the plaintiffs, who claim to be successors in title of the Beaumont Lumber Company, is without right to in any manner attack and set aside said deed, which during the whole of the life of said corporation, subsequent to the execution and delivery of said deed, permitted the same to stand unchallenged either by legal proceedings or otherwise, and all successors in title to said Beaumont Sawmill Company have likewise during the whole period of time including more than 18 years, permitted said deed to stand without challenge by legal procedure or otherwise, and are now estopped to in any manner challenge the validity of said deed or any of the terms thereof.

"Plaintiff further set forth prior to the taking of said property by the Beaumont Sawmill Company, that plaintiff had entered upon said property and constructed said track and taken possession thereof, under an agreement that it should have a permanent easement thereto, and that said track and right of way has always been held, occupied, used, and maintained under the terms of said agreement as the same was evidenced by the deed from the Beaumont Sawmill Company, which was executed in part by reason of the aforementioned agreement, and that the plaintiff had in all things and had at all times performed the obligation imposed upon it under the terms of said deed; that during the whole time of the use of its said property continuously from the time of the agreement, the defendant, nor any of their predeces-

sors in title, had in any manner disputed its rights thereto or the validity of said deed by legal action or otherwise, and the defendant and their predecessors in title have acquiesced in and ratified the action of the officers of said Beaumont Sawmill Company in executing and delivering the aforementioned deed.

"There was a hearing of said motion to dissolve and cross-complaint for injunction as filed by the defendant, and on the 10th day of August, 1925, the district court set aside the original injunction granted to plaintiff, and entered an order herein granting the Miller & Vidor Lumber Company an injunction against the Texarkana & Ft. Smith Railway Company, its agents and officers, servants, employees, and other persons acting for it, pending the final determination of this case, from entering upon, changing, repairing, or doing anything whatsover with the track described in plaintiff's petition, or with the right of way, and from operating trains thereon, except to serve defendant's mill, and restraining and enjoining the railway company from extending or making any improvements of said property; said order also giving to the Texarkana & Ft. Smith Railway Company an injunction against the Miller & Vidor Lumber Company, its servants and agents restraining said company, pending a final determination of this cause, from taking up and removing or destroying any of the railroad tracks laid upon the property described in plaintiff's petition. Both injunctions were based upon the parties giving a bond in the sum of $5,000.

"Both parties to the suit filed bonds. The Texarkana & Ft. Smith Railway Company filed an appeal bond to have said case transferred to this court. The case is now properly before this court for consideration."

On the hearing, it was made to appear without controversy that appellee had a part of its planing mill property situated on the right of way in dispute, inclosing about four feet on each side of the right of way; that its steam pipes crossed the right of way above ground so low that box cars could not pass under them; that this condition had existed more than ten years. Appellants could not be given possession of the right of way prayed for without taking down these steam pipes. The evidence raised the issue that the right of way and track in question had been used only for the purposes of appellee's business, and that appellant now proposes to convert it to the use of the general public.

## Opinion.

Judge Hamilton, speaking for his court in Dallas H. & F. Club v. Dallas County Bois D'Arc I. L. District (Tex. Civ. App.) 235 S. W. 607, said:

"The purpose of a temporary injunction is to maintain or restore the status quo until upon a final hearing court may dispose of the controversy by granting full relief to the party whose right the law and the facts support, and a temporary mandatory injunction should not be granted where it will effectually and finally dispose of the entire subject-matter of the suit.

"Again, as argued by counsel for appellee, to have granted the temporary mandatory injunction would have been effectually and finally to dispose of the entire subject-matter of the suit. Nothing would have been left for a final judgment of the court to operate upon. A temporary injunction is not intended to perform such function. On the other hand, the purpose of it is to maintain or restore the status quo until upon a final hearing the court may dispose of the controversy by granting full relief to the party whose right the law and the facts support. Dollinger v. Horkan (Tex. Civ. App.) 202 S. W. 978; Norwood v. Leeves (Tex. Civ. App.) 115 S. W. 53; Powhatan v. Ritz, 60 W. Va. 395, 56 S. E. 257, 9 L. R. A. (N. S.) 1225; 22 Cyc. 740."

In the case of Simms v. Southern Pipe Line Co. (Tex. Civ. App.) 195 S. W. 288, Chief Justice Pleasants uses the following language:

"In the case of Simms v. Reisner, 134 S. W. 278, this court held: That it was 'not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of title, unless the possession has been forcibly or fraudulently obtained by defendant, and the equities require that the possession thus wrongfully invaded be restored, and the original status preserved pending the decision of the issue of title.' "

In the case of Alexander v. Wilkes-Barre Anthracite Coal Co., 245 Pa. 28, 91 A. 213, the opinion of the court is indicated by the syllabus, and is as follows:

"Where an owner of a dwelling house sued for an injunction to restrain defendant coal company from working its colliery near his residence, a preliminary injunction was properly denied, where the injuries to plaintiff were not of a pressing character, and an injunction would stop the mining operations of defendant, throw a large number of employés out of work, and cause a large loss to defendant, and the injuries complained of had been endured for some time."

[1] The function of a preliminary injunction is stated in Powhatan Coal & Coke Co. v. Ritz, 60 W. Va. 395, 56 S. E. 257, 9 L. R. A. (N. S.) 1225, is shown by the syllabus in the following language:

"The function of a preliminary injunction whether it be prohibitory or mandatory, is to preserve the status quo until, upon final hearing, the court may grant full relief."

[2] From the statement we have made, the court could not have given appellant the temporary relief prayed for without disturbing the possession held by appellee for a long period of years, and without destroying valuable property owned by appellee. The record discloses that appellee offered evidence on the issues raised by its pleading which should go to a jury or its legal effect determined by the court when the case is tried on its merits; at least evidence was offered by appellee on these issues, and it does not appear from the record that appellee ex-

hausted its evidence. That being the case, whatever disposition we might make of this appeal, when the case is tried on its merits this court cannot say that appellee will not be able to offer, evidence raising such issues. And since it was said on oral argument that it had not exhausted the evidence on the temporary hearing, it would not be proper to review the evidence now before us nor to announce the law applicable to its partial development. It might be that such a discussion would tend to confuse rather than aid the trial court.

[3] In granting an injunction in favor of each party against the other, thereby effectively maintaining the status quo, the trial judge exercised a discretion vested in him by law, and as any other order would have disturbed a previous long-enjoyed possession, as well as valuable property rights, we cannot say that the order was wrong, and that he, as a matter of law, abused his discretion in refusing to dissolve the restraining order as made against appellant.

However, in sustaining the trial court's judgment, it is not our purpose to limit the rights of either party when this case is tried on its merits, but the court is to hear the case fully on the pleadings as then tendered.

Affirmed.